# W. E. BOOTH v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

**Division One, March 31, 1909.**

1. **APPEAL: Dismissal: No Order Granting Appeal.** Where the case is brought to the appellate court by the short method, and there is on file with the clerk a certified copy of the judgment and of the order granting the appeal, although the abstract does not show the order, the court will not dismiss the appeal. The abstract should show the order, but it would be sacrificing justice to hold that there is no such order simply because the abstract does not show it, when the clerk's files do.

2. ————: ————: **Motion for New Trial: Set Out in Record Proper.** It is a useless trouble and expense to print the motion for a new trial twice in the same abstract. And while the motion has no lawful place in the record proper, and if it is printed as a part thereof, and is not in fact set out or called for in the bill of exceptions, it will avail appellant nothing, yet if the bill of exceptions contains a recital that on a certain timely date appellant "filed its motion for a new trial, as follows: (Printed on page 17 of this record)," and the motion is found printed on that page of the abstract, it was for all purposes of appeal printed as a part of the bill of exceptions.

3. **NEGLIGENCE: Railroad Company: Liability for Acts of Another.** It is not every use that a railroad company may permit another company to make of its track that will render it liable for the act of the other, but only an unauthorized act involving an abuse or a misuse of its franchise.

4. ————: ————: ————: **Use by Leave.** A railroad company that holds a franchise from the State is under obligation to the State to use that franchise, and is liable for its misuse, even if the misuse is the act of another company by its leave, unless the same high authority which granted the franchise grants also the right to assign or lease it.

5. ————: ————: ————: **Character of Use: No Showing.** When a railroad company is sued by the servant of another company for injury alleged to have been inflicted through the negligence of such other company in operating its train on the defendant company's track, and plaintiff in such case does not show by what authority the other compay was using the track and will not permit defendant to show it, it will not be assumed that the use permitted was in violation of law or under conditions that rendered the owner of the track liable for the torts of the user.

6. ———: ———: ———: ———: ———: **This Case.**
Plaintiff was in the employ of the Missouri Pacific Railway Company as brakeman on a freight train, and the train was passing over a switch track belonging to the Iron Mountain Railway Company in a city; in which was a track of a street railway company, whose cars were propelled by electricity through the medium of a trolley overhead wire, and whose tracks crossed the railroad tracks. Plaintiff, a tall man, was on the top of an unusually tall car in a freight train belonging to and operated by the Missouri Pacific, and while in the usual performance of his duties in that position was struck on the neck by the trolley wire as the freight train passed under it. *Held,* in the absence of any showing upon what condition the Missouri Pacific used the Iron Mountain track, the Iron Mountain Company is not liable for plaintiff's injuries alleged to be due to the negligence of the Missouri Pacific Company.

7. ———: ———: ———: **Trolley Wire: Twenty-Two Feet Above Track.** The said Iron Mountain Railway Company was not negligent on the ground that the street railway company's trolley wire was not maintained at a height of twenty-two feet above the railroad tracks, under the statute (Sec. 1179, R. S. 1899) which requires a street railway company to maintain its electric wires at a height of not less than twenty-two feet above the rail of the railroad track crossed by the street railway.

8. ———: ———: **Trolley Wire: Erected by Permission.** A railroad company does not permit, and has no authority to permit, a street railway company to maintain a trolley wire over its tracks laid in a public street of a city. Neither the railroad company nor the street railway company has the exclusive right to the use of the street, and the railroad company cannot lay its tracks, nor the street railway company stretch its wires, in the public street, without permission from the city. The part of the street occupied by the railroad company's tracks is, in a limited sense, its right of way, but that does not give it control of the street railway company's wire stretched over and across its tracks in the public street, nor is the railroad company responsible for the height at which the wire is maintained.

9. ———: ———: ———: **Reasonable Height.** In a suit against a railroad company, for injuries received by plaintiff who was a brakeman and who standing on a moving freight car was struck in the neck by an overhead trolley wire of a street railway, the standard of reasonable height for such trolley wires is not the 22 feet at which the statute requires street railway companies to maintain said wires, for that statute, while it might apply to the suit if brought against the street railway company, does not apply to a suit brought against the railroad company. A trolley wire may be at a reasonably safe height for trains passing under it, although not twenty-two feet high.

And where the evidence shows that the trolley wire was nineteen feet and five inches above the railroad rails, that the freight car on which plaintiff was standing was two and a half feet taller than the ordinary car, that he was an unusually tall man, that the wire struck him in the neck, that he had been passing under the wire almost daily on freight cars for eighteen months and had not been hurt, and that no other trainman had ever been struck by the wire, whether or not the wire was maintained at a reasonably safe height is at most a question for the jury, but the facts would seem to put that question at rest.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray,* Judge.

Reversed.

*Martin L. Clardy, D. C. Chastain, Edw. J. White* and *Henry G. Herbel* for appellant.

(1)   The court erred in overruling the demurrer of the St. Louis, Iron Mountain & Southern Railway Company interposed at the close of plaintiff's case. Carr v. Railroad, 195 Mo. 214; Sweeny v. Railroad, 10 Allen 372; Wencker v. Railroad, 169 Mo. 599; Moore v. Railroad, 84 Mo. 487; Morgan v. Railroad, 7 Fed. 79; Quinn v. Railroad, 55 N. E. 891; Rains v. Railroad, 71 Mo. 168; Devitt v. Railroad, 50 Mo. 302; Lucas v. Railroad, 174 Mo. 270; Moore v. Railroad, 109 S. W. 498; Cahill v. Layton, 16 N. W. 1.   (2)   The court erred in giving the instructions and each of them offered by plaintiff.   Carr v. Railroad, 195 Mo. 214; Railroad v. Von Hosen, 91 S. W. 604; Dayharsh v. Railroad, 103 Mo. 570; Williams v. Railroad, 129 Mo. 316; Moss v. Railroad, 49 Mo. 167; Tabler v. Railroad, 93 Mo. 79; Bohn v. Railroad, 106 Mo. 433; Rains v. Railroad, 71 Mo. 168; Devitt v. Railroad, 50 Mo. 302; Lynch v. Railroad, 112 Mo. 432.

*R. A. Mooneyham, Hugh Dabbs* and *R. M. Sheppard* for respondent; *A. L. McCawley, Lee Shepherd, Herbert Crane* and *Harry Phelps* of counsel.

(1) The action of the court in overruling the demurrer to the evidence was not error. Nelson v. Railroad, 112 S. W. 1018; McCoy v. Railroad, 36 Mo. App. 456; Railroad v. Mayes, 49 Ga. 355; Price v. Bernard, 65 Mo. App. 651, 70 App. 175; McMarshall v. Railroad, 80 Iowa 757; Charlton v. Railroad, 200 Mo. 413; Railroad v. Meech (Ill.), 45 N. E. 290; Railroad v. Elliott (Ill.), 24 N. E. 559; 2 Elliott on Railroads (1 Ed.), sec. 477; 4 Thompson on Negligence, sec. 4295; Railroad v. Barron, 5 Wall. 90; Young v. Waters-Pierce Oil Co., 185 Mo. 664; Bennett v. Railroad, 102 U. S. 577; Carlton v. Franconia Co., 99 Mass. 216; Archer v. Railroad, 110 Mo. App. 355; Sheppard v. Railroad, 189 Mo. 362; Pauck v. Beef Co., 159 Mo. 467; Geismann v. Electric Co., 173 Mo. 654; Ryan v. Railroad, 190 Mo. 636; Curtis v. McNair, 173 Mo. 270; Paris v. Railroad, 62 N. E. 516; Koerner v. Car Co., 209 Mo. 151. (2) The instructions given on behalf of the plaintiff properly declared the law applicable to the facts of this case. Geismann v. Electric Co., 173 Mo. 654; Gannon v. Gas Light Co., 145 Mo. 512; Ryan v. Railroad, 190 Mo. 636; Hoffman v. Walsh, 117 Mo. App. 278; Paris v. Railroad, 62 N. E. 516; Bragg v. Railroad, 192 Mo. 342; Harrison v. Light Co., 195 Mo. 606; Frye v. Railroad, 200 Mo. 377; Carr v. Railroad, 195 Mo. 214; Young v. Oil Co., 185 Mo. 664; Thompson on Negligence, sec. 4295; Joyce on Electric Law, sec. 409; Perrette v. Kansas City, 162 Mo. 244; Weller v. Railroad, 164 Mo. 180; Hutchins v. Railroad, 161 Mo. 246; Cambron v. Railroad, 165 Mo. 543; Tel. Co. v. Crank, 27 S. W. 38; Smedley v. Railroad, 118 Mo. App. 103.

VALLIANT, J.—This suit was begun against the St. Louis Iron Mountain & Southern Railway Company and the Missouri Pacific Railway Company for damages for personal injuries which plaintiff in his petition alleges he suffered through the negligence of the two defendants. When the plaintiff's testimony was concluded the court gave the jury an instruction to the effect that the plaintiff could not recover against the Missouri Pacific Company, but refused to so instruct as to the Iron Mountain Company; thereupon the plaintiff dismissed his suit as to the Missouri Pacific and the trial went on against the Iron Mountain and resulted in a verdict for the plaintiff for $10,000, from which the Iron Mountain Company appealed.

I.   Respondent has filed a motion to dismiss the appeal alleging as a ground therefor that the circuit court did not make an order granting the appeal.

The cause comes here on a short transcript, that is, a duly certified copy of the judgment and of the order of the circuit court granting the appeal, which order was made during the term at which the judgment was rendered. How then could we say that there was no order allowing the appeal while we have before us a duly certified copy of the order itself? But it is said the abstract does not show it. Suppose that is so, would it not be sacrificing justice to give section 813, Revised Statutes 1899, and the rules of court made in obedience thereto, such an interpretation as would authorize a dismissal of the appeal under these circumstances? That statute was designed to aid in expediting the business of this and the other appellate courts, imposing on the appellant the duty of presenting in brief abstract form the essential points of the record, so that the court could seize the points without consuming time in going through the long transcript to find them for itself. We have often said.

and we adhere to it, that the time of the appellate courts is too valuable to be consumed in labor that can be performed by the attorneys in the case and that we will not search the transcript for what the abstract ought to show. It is true the letter of the statute applies as well to a short as it does to a long transcript, yet its reason and spirit must be looked to in its application. We have held in two recent cases that when the cause is here in the short form, that is, a certified copy of the judgment and of the order granting the appeal, we would not dismiss the appeal because the abstract did not show the order. [Pennowfsky v. Coerver, 205 Mo. 136; Coleman v. Roberts, 214 Mo. 634.]

It is also alleged as a ground for the motion that the abstract does not show that the motion for a new trial was filed during the term at which the judgment was rendered. Respondent is mistaken in point of fact in that particular. The abstract of the record proper shows that the motion was filed within four days after the return of the verdict and during the same term at which the judgment was rendered, that the motion was overruled, and that thereafter the affidavit for appeal was filed and the appeal granted during the same term.

Respondent in his brief says that the motion for a new trial does not appear in the bill of exceptions. That is also a misunderstanding of the abstract. The bill of exceptions purports to set out all the proceedings *in pais* and after setting out the evidence, the instructions and the verdict, it proceeds: "Thereupon, on the same day, to-wit, December 19, 1905, the defendant filed its motion for a new trial in said cause, as follows: (Printed on page 17 of this record.)" Turning to page 17 of the printed abstract we find the motion in full. But the counsel say that on page 17 the motion appears to have been copied into the record proper where it had no lawful place.

It is true the motion had no lawful place in the record proper and if it was not in fact set out or called for in the bill of exceptions it would avail the appellant nothing. But the abstract of the bill of exceptions signifies that the motion was copied therein, and the reference to another page where it is printed in full was only to save the useless trouble and expense of printing it a second time. The motion to dismiss is overruled.

We pass now to the merits of the case.

There is no dispute about the principal facts. Plaintiff was in the employ of the Missouri Pacific Company, as brakeman on a freight train of that company. The train was passing over a switch track belonging to the Iron Mountain Company in the city of Carthage. The tracks crossed a public street in that city, Main street, at right angles or nearly so. The track of a street railroad company, whose cars were propelled by electricity through the medium of a trolley wire, was laid in Main street and crossed this switch track of appellant. On the day of the accident the plaintiff was on the top of an unusually tall box car in a freight train belonging to and being operated by the Missouri Pacific Company, in the usual performance of his duty as brakeman, and while in that position he was struck on the neck by the trolley wire as the freight train passed under it and he thereby received the injuries complained of. The height of the trolley wire above the track was nineteen feet and four inches; that of the car was fourteen feet and eight inches, it was of the highest class of freight cars then in use on any railroad and was about two or two and a half feet higher than the usual cars. This car did not belong to either the Missouri Pacific or the Iron Mountain, but to the St. Louis & San Francisco Railroad Company, and was being switched from the tracks of that company to those of the Missouri Pacific in the usual course of through traffic, the Iron Mountain

switch track being used to make that connection. The plaintiff was six feet and two inches tall which, plus fourteen feet and eight inches, the heighth of the car, made twenty feet and ten inches, which was a foot and six inches higher than the trolley wire.

II. Postponing for the present the question of whether the wire was at a sufficient height to enable the defendant company to operate its trains under it with reasonable safety to its own employees and of whether the defendant was responsible for the lack of height of the wire, if there was a lack, we come to the question, what was the liability of the defendant to the employees of another railroad company using the track?

In the manner in which the question is presented in the plaintiff's petition and brief we may divide it into two questions, to-wit: If the injury was caused by the negligence of the Missouri Pacific while using the track of the Iron Mountain, is the latter company liable? second, if it was caused by a defect in the track rendered so by the impending wire, is the Iron Mountain Company liable? That those are questions of some difficulty were seemingly appreciated by the learned counsel for plaintiff as shown by the careful and cautious wording of the petition. The petition, as we have already said, was levelled at both companies, and a distinct charge of negligence is made against each. The charge against the Missouri Pacific Company is that "its agents and servants in charge of and operating said train" negligently ran the same under the wire without giving him any warning of its condition and after they saw, or by the exercise of ordinary care could have seen, his peril and would have seen that he was unaware of the danger, in time to have avoided the injury, but failed to do so. There the charge is that he was injured by the negligence of his own fellow-servants and that the danger from

the wire was so apparent that if they had exercised ordinary care to protect him they would have seen it. Let us assume for the present that the Iron Mountain Company furnished the Missouri Pacific a defective track, that the danger arising therefrom was so apparent (for that is what the petition says) that if the servants of the Missouri Pacific had exercised ordinary care they would have seen it and could have avoided the injury, but failing to observe such care the plaintiff was injured through their negligence. According to that statement if ordinary care had been exercised the track could have been used with safety, but the plaintiff was injured because of the lack of ordinary care. We have then the question above propounded, is the Iron Mountain Company liable for the negligence of the Missouri Pacific while using the Iron Mountain track?

1. It is the duty of the master to furnish his servant reasonably safe implements and a reasonably safe place in which to work and failing to dò so if the servant is injured thereby the master is liable. That liability arises out of the relation of master and servant. But what is the relation between the servant of that master and a third person who furnishes him the implements or rents him the premises in which to carry on his business? Even if there should be a defect rendering the implement or the place unsafe, is the third person liable to the servant? Without pausing to answer that question we come to the one in this case: suppose there was a defect in the premises furnished which rendered it unsafe, but not so dangerous but that it could be used with reasonable safety if ordinary care was exercised by the master to protect his servant, but the master failed to exercise ordinary care and through his negligence his servant was injured, is the third person liable? We do not understand that counsel for the plaintiff rest the claim of the liability of the Iron Mountain

Company for the negligence of the Missouri Pacific on the law of master and servant or principal and agent, but they limit their contention to the law that is supposed to apply to railroad companies in particular in like circumstances and the proposition is reduced to this: where one railroad company permits another to run trains over its road, it is liable for the negligence of that other in so doing. To some extent there is authority for that proposition but within limits. In 1 Thompson on Negligence, section 585, after discussing the question of the liability of a lessor for the negligence of a lessee, the author says: "But this principle has no application to the case of leases made by *railway companies* and other corporations having public duties to perform, without the consent of the Legislature. In such cases the law does not allow a corporation to cast off its public duties without the consent of the State and devolve them upon another; and if it attempts to do so the law treats such attempt as a mere nullity and holds it liable for the torts of its lessee in operating its road, exactly as though the lease had not been made, or as though the relation of principal and agent existed between the lessor and the lessee." In that statement of the law is comprised the whole doctrine, and the reason for it, that a railroad company is held to a different account for its conduct in such case from concerns engaged in ordinary business, where the law of principal and agent or master and servant applies. Elliott on Railroads, sections 467 *et seq.*, discusses the same subject with elaboration under the captions of authorized, unauthorized and fraudulent leases of one railroad company to another and of one company permitting another to make a joint use of its track, and the same principle as above quoted is recognized. That principle is this, it is not every use that a railroad company may permit another to make of its track that will render it liable for the act of the other company but only an unauthorized use involving an abuse or a

misuse of its franchise. A railroad company which holds a franchise from the State is under obligation to the State to use that franchise and is liable for its misuse, even if the misuse is the act of another company by its leave, unless the same high authority which granted the franchise grants also the right to assign or lease it. In Moorshead v. Railroad, 203 Mo. 121, this court held that a street railroad company which was authorized by an act of the General Assembly to lease its road to another corporation was not liable for the negligent acts of that corporation in operating the road. In that case there was no question of fraud, nor in the act of the General Assembly was there anything to indicate that it was intended to hold the lessor company liable for the acts of the lessee.

In the case at bar we have no lease to consider and we really do not know by what authority the Missouri Pacific Company was using the track, for the plaintiff offered no proof on that point and the defendant was not allowed to make proof.

So far as the petition informs us this was the only time the Missouri Pacific ever ran its train over this track, although the evidence showed that it had been doing so every day for at least eighteen months before the accident. But the plaintiff did not undertake to show by what authority the Missouri Pacific was so using the track and when the defendant offered to prove what the arrangement between the two companies was under which the track was so used the testimony was, on the plaintiff's objection, excluded, on the ground that it was immaterial, the court saying it made no difference what the arrangement was. Under that ruling the Iron Mountain would be liable for the act of the Missouri Pacific even if the latter was a trespasser on its track.

Elliott on Railroads (2 Ed.), vol. 1, sec. 477, says: "It is held by the Supreme Court of the United States that a railroad company which permits another to make

a joint use of its track is liable to a person injured by the negligence of the company to which the permission is granted.'' The learned text-writer is not entirely in accord with that doctrine but he says the weight of authority seems to be that way. In a note to the text the case cited as deciding that point is Railroad v. Barron, 72 U. S. (5 Wall.) 90. But the facts of that case presented a very different question from that which arises on the facts in this case. In that case the person injured was a passenger in a train that was owned and being operated by the defendant railroad company that owned the track, and the accident was caused by the train being run into and crushed by an express train belonging to another railroad company which was using the track by permission of the defendant company. The theory of that case is that the railroad company which owned the track was not taking proper care of its own passengers when it permitted another train not under its own management to intrude. That case is probably responsible for much that has been written on that subject, but when read in the light of its own facts it does not justify all that has been written, it does not at least justify the conclusion that respondent in this case draws from it.

Bennett v. Railroad, 102 U. S. 577, is also cited, but that does not bear on the question before us. The railroad company was held liable in that case, not on any rule of law applicable particularly to railroad companies, but on the general principle that any one who owns land and induces others to come upon it for a lawful purpose is liable to them in damages resulting from an unsafe condition of the premises, if he negligently suffered the dangerous condition to remain after he had notice of it and gave the public no warning. In that case the railroad company owned and maintained a wharf con-

necting its railroad depot with a steamboat landing and a passageway was built by the railroad company to enable persons to pass from the depot to the steamboat. There was a hatchway on the premises, though not in the walkway, that was designed for foot passengers, plaintiff in the night attempted to go to the steamboat landing, but the light which he carried was blown out by the wind and in the darkness he lost his way and fell into one of the hatchholds.

We do not discover in any of the other cases cited by the counsel for respondent anything in conflict with the principle we have above stated. Cases there are which hold that a railroad company is liable to its own employee or its own passenger for an injury resulting from a condition which it permitted another to make and over which it had control, rendering the running of trains on its road more dangerous. The law for such cases is found either in the law of master and servant or in the law of carrier and passenger. But in this case there has been no injury to a servant or a passenger of the defendant, the Iron Mountain Company.

When a railroad company is sued for an injury alleged to have been inflicted through the negligence of another company operating a train on its road, the burden of proof may be on the company that owns the road to show its lawful right to allow the other company to use its track, as in the Moreshead case above referred to, but when in such case the plaintiff does not show by what authority the other company was using the road and will not allow the defendant to show it, we have no right to assume that the use permitted was in violation of law or under conditions that rendered the owner of the track liable for the torts of the user.

If a flood following an extraordinary rainstorm should wash away a bridge or otherwise render a railroad temporarily unfit for travel and its trains should

be delayed, if another railroad company, in view of the distress, should permit one of the delayed trains to pass over its tracks in furtherance of its journey, and if a passenger on such train should be injured through the negligent management of the train by its own train crew there would be neither law nor reason nor common justice in saying that the railroad company that owned the track was liable merely because it suffered the other company to pass its train over the track.

Under the facts of this case we hold that if the plaintiff was injured through the negligence of the Missouri Pacific Company the Iron Mountain Company is not liable, although the Missouri Pacific was at the time using the Iron Mountain track. If the Iron Mountain Company is held liable in this case it must be because of its own negligence.

2.    This brings us to the consideration of the second question above propounded, to-wit, if the injury was caused by a defect in the track and that defect was caused by the impending wire, is the Iron Mountain Company liable?

The petition charges the defendant Iron Mountain Company with negligence in three particulars, viz: first, it says that it was its duty to have maintained the wire at a height not less than 22 feet; second, that it was its duty to have warned the employees of the Missouri Pacific of the dangerous condition of the wire; third (and it is the main charge), that the defendant permitted the street car company to maintain the wire at the alleged unsafe elevation.

When the plaintiff alleged in his petition that the defendant  should have maintained the wire at the height of 22 feet he doubtless had in mind the statute, section 1179, Revised Statutes 1899, Ann. Stat. 1906, p. 995, which is in these words:

"All street railway companies or corporations operating cars by electricity, or by overhead wires,

shall construct and maintain its wires at a height of not less than twenty-two feet above the top of the rail of the railroad track crossed by such street railway company, and the wires of such street railway company shall be guarded, or provided with fenders or guard wires, so as to prevent the same from coming in contact with the cars, track or telegraph line along the track of such railroad company.''

But the plaintiff, doubtless understanding said section, as its language indicates, to be a law for the conduct of street railroads, did not ask that the cause be submitted to the jury on the theory that the defendant was guilty of negligence as for not conforming to the requirements of that section, but the instructions asked by the plaintiff and given were solely on the theory that the trolley wire ''was suspended over said railroad so low as to endanger the plaintiff in passing under the same while standing in the usual and customary position on top of said train.'' Those words tendered an issue of fact which was not answered by the statute. As a matter of fact the wire may have been reasonably high for the usual business of the defendant though less than 22 feet, and that is the theory on which the plaintiff asked to go to the jury. The defendant was not negligent on the ground that the wire was not 22 feet high.

The next proposition announced in plaintiff's petition is that because the wire was suspended only nineteen feet and five inches above the track, the duty devolved on the Iron Mountain Company to give the employees of the Missouri Pacific Company warning to look out for the danger. That proposition does not seem to be seriously urged and we know of no theory of law on which it could be sustained.

Plaintiff's last charge of negligence is that the Iron Mountain Company permitted the street car company to maintain the wire at the alleged unsafe height.

The petition nowhere charges that the Iron Mountain Company maintained the wire or that the street railway company derived its authority from the Iron Mountain Company to erect and maintain it, or that the Iron Mountain Company had any control over the street railroad company, but the whole charge is compassed, somewhat vaguely, in the assertion that the Iron Mountain Company permitted the street railroad company to do the thing complained of.

We do not find in any of the many cases cited by respondent in his brief one answering the vital question in this case. In his brief respondent assumes that appellant had control of the wire because he says it was on appellant's right of way. If that were so and if the wire was so low that it rendered the passage of trains under it unsafe for the men operating the trains with reasonable care, we would have a very different case to decide. A railroad company has control of its right of way through the county and has the right to keep anyone off who erects or attempts to erect a structure dangerous to the operation of its trains and has the right to remove offensive structures. But this trolley wire was not on premises that the railroad company controlled, it was on a public street which was in the control of the city. The street car company was there presumably by the same authority that the railroad company was, and with as much right. If either was doing wrong to the injury of the other an appeal to the city authorities or to the courts was the only means of redress. If a corporation using electric wires should stretch a wire across a railroad company's right of way in the country at an elevation that rendered it dangerous to persons on trains of the railroad company, the latter would have a right, after reasonable notice to the offending company, to cut down the poles and remove the wire, and so it would anywhere where the railroad company had full control of its right of way. But a railroad company lays its tracks

in a public street only by permission, and its use of the street, even that part which its tracks actually cover, does not belong to the railroad company, and is not under its exclusive control. The portion of the street occupied by the defendant's railroad was, in a limited sense, its right of way, and so the portion occupied by the street railroad company was its right of way, and the point where their respective tracks actually crossed each other belonged as much to one as it did to the other, and it belonged to neither nor to both exclusively. If this trolley wire had crossed the defendant's right of way at a point where the defendant had control it might with propriety be said that the defendant permitted the street car company to maintain it, but that was not the fact, it crossed defendant's track in a public street where the defendant could neither refuse to allow it to cross nor permit it to do so.

There was some effort made to show that the defendant company erected the wire, but that effort went no farther than to show that the railroad company which formerly owned the track furnished the street railroad company the poles on which to elevate the wire at that point higher than it had been originally. The street railroad company erected the wire, and there was no suggestion that the poles were not tall enough to have allowed the wire to have been raised higher. Besides that was not really a question in the case, the petition did not state that the defendant company had erected the wire, but the charge was that it had permitted the street railroad company to do the thing complained of.

We therefore hold that there was no evidence to sustain the charge that defendant permitted the wire to be maintained.

III. Perhaps it may be said that there was evidence tending to show that the wire at the height it was maintained was not reasonably safe. The wire was

not twenty-two feet high, as the statute above mentioned requires, but this suit is not under that statute. If plaintiff had sued the street railroad company for the injury there is authority for saying that it would have been liable under the statute. [Smedley v. Railroad, 118 Mo. App. 103.] A wire may be at a height which under the circumstances of the case is reasonably safe fo.· trains passing under it although not twenty-two feet high. We are not now speaking of a case in a suit against a street railroad company founded on that statute, but we confine what we say to the case at bar. Plaintiff seems to have assumed that the height required by the statute was the standard and because this wire was not up to that standard it was dangerous, but that cannot be assumed under the petition in this case. The charge in the petition is that it was maintained at ·an elevation too low to be reasonably safe when used with ordinary care. That is a question of fact. Plaintiff contented himself with showing that the height of the wire was nineteen feet and five inches and that he was struck by it on the neck as the car on which he was standing passed under it. But the plaintiff's evidence also showed that the car in question was unusually tall, two to two and a half feet taller than the ordinary, and that he was an unusually tall man, six feet and two inches in height. The conductor of the train standing on the same car near the plaintiff passed safely under the wire. Plaintiff's testimony also showed that for at least eighteen months he had been passing under this wire on freight trains at least once a day and sometimes oftener, sometimes standing on box cars, more frequently on flat cars, and was never hurt. If the mere fact that the plaintiff got hurt while standing at his full height on an unusually tall car can be said to be evidence tending to show that the wire was not at a reasonably safe height for men passing under it, observing ordinary care, the fact that trains of this

kind had been passing under it in safety for at least eighteen months would seem to put the question at rest. But we do not say that if that had been the only question in the case the court erred in submitting it to the jury.

IV. We think the evidence conclusively shows that it was the plaintiff's own negligence that caused the accident. He was as familiar as one could be with the premises—he knew that the wire was there, he passed under it on an average of at least once a day, sometimes several times in a day, for a period of at least eighteen months. Sometimes he passed under the wire standing on the top of box cars, more frequently on flat cars, but often enough to have given him full knowledge of the situation. He was an experienced brakeman and knew the class and character of freight cars. This was a car of unusual height, which fact was plain to view; he climbed on it from the ground to the top and he could not have failed to have noticed its unusual height if he had paid any attention to it. But, unfortunately for him, for the moment he was unmindful of the situation. In charging negligence against the Missouri Pacific he says in his petition in effect that the danger was so apparent that the servants of the Missouri Pacific in charge of that train were negligent in not observing it and warning him of the danger. If they could see, why could not he? He had as fair a view of the situation as any of his fellow-servants.

We hold that there was no evidence tending to sustain the charge that the defendant, the Iron Mountain Company, permitted the street railroad company to maintain the wire, or that the Iron Mountain Company was responsible for the height at which the wire was maintained, and we also hold that the Iron Mountain Company is not liable under the pleadings and evidence in this case for the negligence of the Missouri Pacific Company, if there was such negligence, and we further

hold that the plaintiff's own evidence shows that the accident resulted from his own negligence in failing to notice the wire as he was passing under it.

After what is above said it is unnecessary to discuss the instructions.

The judgment is reversed. *Lamm, P. J.,* concurs in Paragraphs I, II and III and in the result; but dissents from Paragraph IV, which holds as a matter of law that plaintiff was guilty of negligence; *Woodson, J.,* concurs in Paragraph I and in the first subdivision of Paragraph II and in the result in the second subdivision of Paragraph II, expresses no opinion as to Paragraph III, and concurs in the result, but dissents from Paragraph IV; *Graves, J.,* not sitting, having been of counsel.