LIZZIE OGAN, Respondent, v. MISSOURI PACIFIC
RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 27, 1910.

1. **MASTER AND SERVANT: Negligence: Breaking of Chain: Sufficiency of Evidence.** A derrick chain broke under a jar that was not unusual. The evidence showed that the chain had been in use four years and continuously exposed to the weather; that it had been broken three weeks before; that the only tests made as to its sufficiency were visual tests by the foreman in charge of the wrecking car of which the derrick was a part. There was sufficient evidence in the case to authorize the submission of plaintiff's case to the jury.

2. ———: **Degree of Care Ordinarily Imposed.** A master is not an insurer of the safety of his servant. He is only required to use reasonable care to furnish his servants a reasonably safe place in which to work, and to supply him reasonably safe tools and appliances.

3. ———: **Master and Servant: Negligence: Care Required of Master in Case of Unusual Danger.** Where danger of injury is greater than usual, greater vigilance is imposed on the master to keep appliances reasonably safe.

4. ———. Where a derrick is exposed to a great strain, and its appliances are subjected to deteriorations it is not sufficient for the master to remain passive, and assume that because it is working well it will always do so. He must make reasonable tests at reasonable intervals.

5. ———: **Evidence: Size of Plaintiff's Family.** It is not reversible error to permit a plaintiff to testify as to the size of his family.

6. ———: **Instructions: Assumption of Disputed Facts.** Plaintiff's first instruction did not assume any disputed fact.

7. ———: **Instructions: Death: Measure of Damages.** An instruction on the measure of damages for death under section 2866, R. S. Mo. 1899, is not erroneous because it did not require the jury to take into consideration the mitigating and aggravating circumstances attending the cause of death.

Appeal from Jackson Circuit Court.—*Hon. James E. Goodrich*, Judge.

AFFIRMED.

*Elijah Robinson* for appellant.

(1) The defendant was not an insurer of the safety of its employees; nor was it its duty to furnish absolutely safe appliances. Tabler v. Railroad, 93 Mo. 79; Bowen v. Railroad, 95 Mo. 268; Gutridge v. Railroad, 105 Mo. 520; Siela v. Railroad, 82 Mo. 430; Covey v. Railroad, 86 Mo. 635; Blanton v. Dold, 109 Mo. 64; Glover v. Bolt & Nut Co., 153 Mo. 327; Furber v. Bolt & Nut Co., 185 Mo. 301; Howard v. Railroad, 173 Mo. 524; Higgins v. Railroad, 43 Mo. App. 547; Krampe v. Brewing Co., 59 Mo. App. 277; Brown v. Lumber Co., 65 Mo. App. 162; Marshall v. Hay Press Co., 69 Mo. App. 256; Stalzer v. Packing Co., 84 Mo. App. 565; Bennett v. Lumber Co., 116 Mo. App. 699; Dunn v. Nicholson, 117 Mo. App. 374. (2) The employer is only required to exercise ordinary care in respect to the furnishing of appliances that are reasonably safe. Stalzer v. Packing Co., 84 Mo. App. 565, and authorities above cited. (3) The presumption is that an appliance was not defective, and this presumption must be overcome by substantial evidence to the contrary. Glasscock v. Swofford, 106 Mo. App. 657. (4) In this case the evidence was all one way, and to the effect that the chain in question was reasonably safe. Reames v. Jones, 99 Mo. 396.

*L. A. Laughlin* for respondent.

JOHNSON, J.—This action is prosecuted by a widow to recover damages for the death of her husband which, she alleges, was caused by the negligence of defendant. The cause is here on appeal from a judg-

ment for $5000, rendered against defendant in the trial court.

The husband of plaintiff, Robert D. Ogan, was killed April 28, 1907, near Lexington. He was in the service of defendant at the time and was a member of a wrecking crew of which his brother Andrew J. Ogan was foreman. An engine and some coal cars had been derailed on a spur track leading to a mine, and the wrecking crew and train were engaged in replacing them on the track. The engine had been replaced and removed from the scene, and the efforts of the crew then were directed to one of the coal cars which, at the time of its derailment, was loaded with coal. The derrick car was run alongside and anchored to the track to hold it in place. The derrick picked up the coal car, swung it across the track to dump out the load and then was proceeding to set it on the track when a jar occasioned by the striking of the suspended car against the track or embankment, caused one of the boom guy chains to break. The boom, released from the position in which the chain held it, swung around and upset the derrick car, despite its anchorage. Ogan, whose station was on the car, was caught in the fall and pinned under the car. The derrick, built on a flat car, consisted in part of a mast about ten feet high, a boom thirty-six feet long, a hoisting cable of rope operated by power from the locomotive, and two guy chains employed to hold the boom in position. Each of these chains was twenty-three feet long and was composed of wrought iron links three inches long and seven-eighths of an inch thick. The chain which broke had been in use about four years and had been constantly exposed to the weather. One of the links snapped in two, whizzed off and became lost. The load being lifted was not heavy for the derrick, and we do not agree with defendant in the view that the jar and consequent strain on the derrick produced by the bumping of the load against the track was unusual. The evidence shows

this occurrence was not out of the ordinary. It appears that some three weeks before the event in question, another link of the chain broke while the derrick was in use. The chain was repaired immediately and restored to service. Further, it appears that the foreman had made a requisition on defendant for a new chain which, at the time of the injury, had not been honored. The foreman testified that he made a visual inspection of the chain every time the derrick car was used and that when the chain was being repaired he went over it carefully and saw no defects in it. No other tests or examination were ever made and the expert evidence introduced by plaintiff is to the effect that a mere visual examination will not disclose defects produced in wrought iron by severe use and rust. Such defects, it is shown, tend to impair the tensile strength and to make the metal brittle, but their presence can be discovered only by mechanical tests.

Negligence is pleaded in the petition as follows: "That said chain which broke and caused said car and derrick to turn over was old and defective, and the defect therein was known to defendant or could have been known to it by the exercise of reasonable care in time to have remedied the same before the accident."

First, we shall dispose of the contention of defendant that the jury should have been peremptorily instructed to return a verdict in its favor. It is hardly necessary to repeat the familiar rules that a master is not the insurer of the safety of his servant, and is only required to exercise reasonable care to furnish his servant a reasonably safe place in which to work, and with reasonably safe tools and appliances. This duty, however, is a continuing duty and its demands are to be measured largely by the character of the work being done. Where the natural risks and dangers are great, ordinary care requires greater vigilance on the part of the master than is required where the natural risks and dangers are slight.

The derrick under consideration was employed in the execution of titanic tasks and was subjected to heavy burdens and strains. Naturally, a chain, subjected, at times, to strains and shocks and exposed continuously to the action of the weather, will become weakened, not only from rust, but from molecular processes, such as crystallization and "fatigue." Knowing that the use of defective guy chains might be highly dangerous to the members of the wrecking crew, defendant was bound to know that in the course of time the chains would become unsafe and that it would not be the part of ordinary care to wait for them to break before strengthening them or replacing them with others. In cases such as the present, the duty to inspect and to make ordinary mechanical tests at reasonable intervals is an affirmative and a continuous duty. "It will not do to say that having furnished suitable and proper machinery and appliances, the master can thereafter remain passive, so long as they work well and seem safe. The duty of inspection is affirmative and must be continually fulfilled and positively performed. Anything short of this would not be ordinary care." [Houston v. Brush, 66 Vt. 331; 29 Atl. Rep. 380.]

The pertinent rule thus is stated in Labatt on Master & Servant, vol. 1, sec. 159: "In view of the natural tendency of an inorganic instrumentality to become less and less safe the longer it is used, a court will not set aside a verdict for the servant which is based upon the theory that the failure to inspect it was culpable, where the evidence shows that it had been a part of the master's plant for such a period that, taking into account the nature of the materials of which it was composed, the functions it was performing, and the various influences to which it was exposed by climatic changes or physical forces, it is not an unreasonable inference that a prudent man would have examined it for the purpose of ascertaining what its actual condition was."

We think the question of defendant's negligence is presented by the evidence as an issue for the triers of fact. The facts that the chain had been in severe use for four years, had been exposed to the weather, and had broken under ordinary conditions, sufficiently support the inference that a reasonably careful and prudent person in the situation of defendant would have deemed it unsafe to continue the use of the chain without making reasonable tests to ascertain its true condition. In support of what we have said is the following excerpt from the opinion of our Supreme Court in Guthridge v. Railway, 105 Mo. 520: "We quote these authorities to show that the master is not always and under all circumstances, excused if he could not *see* a defect, and if the conditions are such as would excite suspicion in a man of ordinary prudence he must go further and apply other tests. We know that machinery, and the materials composing it, may be tested in various ways. What the ordinary tests, as applied to railroad appliances, are, is not disclosed by this record; but we feel satisfied that *looking* is not the only test. The master must use such reasonable tests to discover defects as ordinary prudence suggests. The amount of care required is measured by the circumstances of each case, depending upon the kinds of machinery used, the risks incident to its use, and the hazard of the business in which it is used. Whether the defendant could have discovered the defect in the handhold in this case by the exercise of ordinary care, was a question for the jury, and not for the court, to determine."

The demurrer to the evidence was properly overruled.

Point is made that the court erred in permitting plaintiff to testify to the number and the ages of her minor children. The Supreme Court has ruled this point adversely to the contention of defendant. [Tethe-

row v. Railroad, 98 Mo. 74; Soeder v. Railway, 100 Mo. 673; Schlereth v. Railway, 115 Mo. 88.]

Other objections to rulings on evidence have been examined and found to be not well grounded.

The instructions given at the request of plaintiff were as follows: "The court instructs the jury that if you believe from the evidence that on or about the 28th day of April, 1907, the husband of plaintiff was in the employ of defendant on a wrecking car as boom man on a derrick and that while in the discharge of his duties as such employee, one of the guy chains of said derrick broke by reason of its being old and defective, if you so find, causing said car to turn over and that plaintiff's husband, without carelessness or negligence on his part which contributed directly thereto, was caught beneath said car and killed, and if you further find that said chain at said time was old and defective and that such breaking was caused because said chain was old and defective and that such defective and unsafe condition of said chain was unknown to plaintiff's husband and could not have been known to him by ordinary care or caution on his part, but was known to defendant or might have been known to defendant by the exercise of reasonable caution and diligence on the part of defendant in time to have remedied the same before said accident then your verdict should be for the plaintiff."

"(2) The court instructs the jury that if you find for the plaintiff you will assess her damages at such sum not exceeding five thousand dollars as you may deem fair and just under the evidence in this case with reference to the necessary injury resulting to her from the death of her husband."

The first instruction is criticised on the ground that it assumes the chain in question was unsafe. We do not so understand the instruction and find it to be free from prejudicial error.

It is argued that since the statute provides, "in

every such action the jury may give such damages not exceeding $5000 as they may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue, and also having regard to the mitigating and aggravating circumstances attending such wrongful act, neglect or default," the second instruction is erroneous because the jury were not required to take into consideration "the mitigating and aggravating circumstances."

The defendant did not ask an instruction on the measure of damages, and following repeated decisions of the Supreme Court and the Courts of Appeals, we must hold the instruction under consideration to be unobjectionable. [Tetherow v. Railway, *supra*; Browning v. Railway, 124 Mo. 55; Barth v. Railway, 142 Mo. 535; Boettger v. Iron Co., 124 Mo. 87; Geismann v. Electric Co., 173 Mo. 654; Parman v. Kansas City, 105 Mo. App. 691; Gamache v. Metal Co., 116 Mo. App. 596.]

The case was tried without error and accordingly the judgment is affirmed. All concur.