BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1913.

J. P. BIBLE, Respondent, v. ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, March 3, 1913.

1. DAMAGES: Personal Injuries: Amount of Damages Not Fixed in Petition: Need Not be Fixed in Instructions. Where the petition states generally that the plaintiff has lost his time and earnings, and will continue to do so by reason of the injuries complained of, without fixing or limiting the value and amount of such loss, the instructions may also leave such amount unlimited.

2. ————: ————: Amount of Damags Fixed in Petition: Must be Limited to That Amount in Instructions. Where the petition fixes and limits the amount of damages for loss of time and earnings, either past or future, the instructions must limit the amount to be awarded by the jury for such loss of time and earnings to an amount not to exceed that so fixed and limited in the petition.

3. ————: ————: Pleading: Construction of. In his petition plaintiff stated the character of his employment and that he was earning "about $700 per annum and was in line of promotion for higher wages" in connection with the allegations as to loss of time and future earnings. This did not require an instruction limiting his recovery to a definite amount.

(519)

4. **MASTER AND SERVANT: Tools and Appliances: Duty of Master.** The master must use ordinary care to provide reasonably safe appliances for the servant's use, which duty is a continuing one, not ending with furnishing tools and appliances reasonably safe at the time furnished. The master owes the servant the duty of inspection, which must be continually fulfilled and positively performed.

5. ———: ———: **Tools and Appliances: Duty of Servant.** The duty of the servant only goes to the extent that he shall not use appliances which are so obviously and glaringly defective that a reasonably prudent man would not attempt to use them. It is of a negative and passive character, the servant having a right to rely upon his master's judgment for the safety of appliances furnished for his use when not obviously defective.

6. **MASTER AND SERVANT: Assumption of the Risk.** In an action against the master for personal injuries occasioned by the breaking of a rope furnished by the master for use by the servant in raising timbers onto a car, which rope was worn and defective and had been in use for more than a year, the servant did not assume the risk, unless the defects were so glaring that a reasonably prudent man would not have attempted to use such rope.

7. ———: **Negligence of Master: Servant Need Not Anticipate.** The servant never assumes the dangers arising from the negligence of the master, because he is not required to anticipate that the master will be negligent.

8. ———: **Personal Injuries: Excessive Verdict.** Five thousand dollars is not an excessive verdict for personal injuries, on account of which the plaintiff was rendered "a nervous and physical wreck, beyond hope of recovery and totally disabled from making a living."

Appeal from Lawrence Circuit Court.—*Hon. Carr McNatt*, Judge.

AFFIRMED.

*W. F. Evans* and *Mann, Todd & Mann* for appellant.

(1) The court erred in telling the jury in plaintiff's instruction 2 defining the measure of damages that they should take into account all loss of earnings, if any, which they may find from the evidence plaintiff has already sustained by reason of such injuries, and

that they should take into account all loss of earnings, if any, that they may find from the evidence plaintiff will sustain in the future as direct result of such injuries, if any, without limiting the right to find for the plaintiff for loss of earnings to the amount alleged in his petition. Smoot v. K. C., 194 Mo. 513; Radtke v. Basket & Box Co., 229 Mo. 1; Heinz v. Railroad, 143 Mo. App. 38; Tinkle v. Railroad, 212 Mo. 471. (2) The court erred in refusing to instruct the jury at the instance of the defendant that under the law and the evidence plaintiff was not entitled to recover, and its verdict should be for the defendant. McGaffrey v. Glue Co., 143 Mo. App. 24; Lowe v. Railroad, 148 S. W. 956; Covey v. Railroad, 86 Mo. 635; Hicks v. Railroad, 46 Mo. App. 309; Harris v. Railroad, 146 Mo. App. 524; Knorpp v. Wagner, 195 Mo. 663; Lucey v. Oil Co., 129 Mo. 32; Holloran v. Foundry Co., 133 Mo. 477; Denker v. Milling Co., 135 Mo. App. 340; Myer v. Glass Co., 129 Mo. App. 556; Bradley v. Tea & Coffee Co., 213 Mo. 329.

*Sizer & Kemp* for respondent.

(1) The demurrers were properly overruled, for it was admitted that the rope was defective—at least there was no testimony offered to disprove plaintiff's testimony and that of his witnesses, and there was no inspection and no attempt to show a semblance of inspection, and plaintiff was under the immediate control of his boss at the time, and if there is any evidence to sustain the allegations of negligence, the case should be submitted to the jury, and this court will give to plaintiff's evidence the strongest and most favorable construction. Phelan v. Construction Co., 227 Mo. 704; Klankenbrink v. Railroad, 172 Mo. 688; Holloway v. City, 184 Mo. 19. (2) With the proposition that this court must give every weight and every reasonable inference to plaintiff's evidence, we find

that the evidence absolutely establishes the fact that the rope was old, defective and unsafe. The defect was to a large extent a latent one, and therefore it was the positive duty of the master to inspect for such defects, which must be continually performed. Ogan v. Railroad, 142 Mo. App. 251; Labatt on Master and Servant, sec. 159; Gutridge v. Mo. Pac., 105 Mo. 528; Baker v. Railroad, 95 Penn. St. 211; Tatem v. Railroad, 96 Mo. App. 454; Younge v. Frisco, 133 Mo. App. 159. (3) The duty to inspect and to make ordinary mechanical tests at reasonable intervals is an affirmative and a continuous duty. It is not enough to say that having furnished suitable and proper machinery and appliance, the master can thereafter remain passive, so long as they work well and seem safe. The duty of inspection is affirmative and must be continually fulfilled and positively performed. Anything short of this would not be ordinary care." Ogden v. Railroad, 142 Mo. App. 252. (4) The law does not permit the appellate court to try appellant's case on a different theory from that upon which it was submitted and tried in the lower court. Masterson v. Transit Co., 204 Mo. 507; Chandler v. Gloyd, 217 Mo. 416; O'Keefe v. Railroad, 124 Mo. App. 619; Cary v. Car Co., 125 Mo. App. 193; Nicket v. Railroad, 135 Mo. App. 661; Mitchell v. Railroad, 125 Mo. App. 1. (5) The failure to test and inspect the rope made the question of negligence one for the jury. Covey v. Railroad, 86 Mo. 635; Denker v. Milling Co., 135 Mo. App. 340. (6) The master's negligence, if proven or conceded, eliminates the question of assumption of risk. Holman v. Iron Co., 152 Mo. App. 685; Wiley v. Gas. Co., 132 Mo. App. 380; Warren v. Railroad, 113 Mo. App. 498; Tinkle v. Frisco, 212 Mo. 468; Strickland v. Woolworth, 143 Mo. App. 528; George v. Frisco, 225 Mo. 364; Younge v. Frisco, 133 Mo. App. 141. (7) When plaintiff showed that other roads inspected their ropes and tools in the bridge depart-

ments, this is additional evidence and a circumstance to show that the Frisco was negligent, when it was failing to do what other roads were doing. Robinson v. Frisco, 133 Mo. App. 120; Beard v. Car Company, 72 Mo. App. 583; Monahan. v. Coal Co., 58 Mo. App. 74. (8) Where the master's foreman is present on the ground and directing the movements, then the servant's duty is to obey the master; and he has a right to rely upon the superior knowledge of the foreman that the tools and machinery and place to work are reasonably safe, and if hurt so doing can recover. Bloomfield v. Wooster Co., 118 Mo. App. 259; Hall v. Wabash, —— Mo. App. ——, 145 S. W. 1170. (9) And if servant obeyed the master he is not chargeable with contributory negligence. Reeder v. Railroad, 129 Mo. App. 116, 117. (10) The use of the word *"about"* in the petition gives a margin for a moderate excess in or diminution of, the quantity of damages, and negatives the idea that exact precision is intended." 1 Cyc. 197; Reuter v. Sala, 4 C. P. D. 239; Cutts v. King, 5 Me. 482; Purinton v. Sedgley, 4 Me. 283; Bank v. Assurance Co., 106 Mo. App. 114; Robinson v. Ins. Co., 105 Mo. App. 567; Strauss v. Transit Co., 102 Mo. App. 644, 649. (11) Instruction No. 2 was right and harmless, and the defendant failing to ask an instruction specifically limiting the amount of the recovery, this court cannot and will not interfere and help appellant out of the difficulty, if any. Geissman v. Electric Co., 173 Mo. 679; Gamache v. Tin Foil Co., 116 Mo. App. 601; Taylor v. Iron Co., 133 Mo. 364; Ogden v. Railroad, 142 Mo. App. 254.

STURGIS, J.—The plaintiff sues for personal injuries occasioned by falling from one of defendant's flat cars while he was assisting in loading some bridge timbers on the same. He was one of a crew engaged in building and repairing bridges along the defendant railroad. The crew was supplied with cars, tools,

ropes and other equipment and moved from place to place as the work demanded. On this particular occasion the crew were preparing to move to another place and plaintiff and several other workmen were directed by the foreman to load some rather large and heavy bridge timbers, about thirty-two feet long, upon a flat car, preparatory to moving the same. These men were under the immediate and direct control of a boss or foreman who directed the work. The bridge timbers were loaded on the flat car by means of ropes and skids. Two or more ropes were used for this purpose and one end of each was fastened to a post on the far side of the car and, after being let down and placed under and around the heavy timbers, the men on top of the car, by pulling on the other end of the ropes, drew the timbers up on the skids to the top of the car. After the car had been partially loaded in this manner and while plaintiff and another man, standing on the timbers already loaded, were thus pulling on one of the ropes raising the bridge timbers to the top of the car, the rope broke causing them to fall backward off the car, resulting in the injuries for which plaintiff brings this action.

The plaintiff alleges that his spine was fractured, that he was injured internally and became a nervous wreck. "That said injuries were permanent in their nature and extent and plaintiff will be a cripple the balance of his life and will suffer great pain and anguish of mind and body as long as he lives. That on account of said injuries his life expectancy has been shortened, and he has totally lost all of his earnings since the date of said injuries." The jury awarded plaintiff five thousand dollars for these injuries, which verdict was approved by the trial court and judgment entered accordingly.

Three assignments of error are made and relied on by defendant in this court: (1) The instruction given for plaintiff on the measure of damages; (2)

the refusal to sustain the demurrer to the evidence; (3) that the verdict is excessive.

The instruction on the measure of damages is assailed because of not following the petition in limiting the amount of damages to be allowed for loss of time and earnings. On this point the petition alleges: "That prior to said injuries plaintiff was an able-bodied man, strong and vigorous and healthy; that he was earning *about* $700 per annum, and was in line of promotion for *higher wages*; that all of said earnings had been lost to plaintiff and on account of the permanent nature of said injuries plaintiff will be a cripple the balance of his life and will lose all of his earnings in the future, as his earning capacity has been totally destroyed." The instruction complained of, after specifying other elements of damages to be considered by the jury, says: "You should further take into consideration all loss of wages, if any, which you may find from the evidence that plaintiff has already sustained by reason of such injuries, if any, and you should take into account all loss of earnings, if any, that you may find from the evidence plaintiff will sustain in the future as a direct result of said injuries, if any."

We think this instruction is not erroneous under the pleadings and facts in this case. It will be conceded, we think, that where the petition does not limit the loss of time to a definite amount, then the instructions need not do so, where the petition states generally that the plaintiff has lost his time and earnings and will continue to do so by reason of the injuries, without fixing or limiting the value and amount of such loss, then the instructions may also leave such amount unlimited and merely tell the jury to take such loss of time and earnings into consideration in arriving at the total damage. An approved instruction along this line will be found in Reynolds v. Transit Co., 189 Mo. 408, 419, 88 S. W. 50. [See also Dean v. Wabash Railroad Co., 229 Mo. 425, 455, 129 S. W. 953.]

On the other hand, where the petition fixes and limits the amount of damages for loss of time and earnings, either past or future, then the instructions must limit the amount to be awarded by the jury for such loss of time and earnings to an amount not to exceed that so fixed and limited in the petition. [Smoot v. Kansas City, 194 Mo. 513; 92 S. W. 363; Radtke v. Basket & Box Co., 229 Mo. 1, 129 S. W. 508; Heinz v. Railways Co., 143 Mo. App. 38, 122 S. W. 346; Tinkle v. Railroad, 212 Mo. 445, 471, 110 S. W. 1086.] The reason given for this rule is stated in Radtke v. Basket & Box Co., 229 Mo. 1, 19, 129 S. W. 508, to be that, "Defendant had a right to rely upon the admission of plaintiff that his loss in this respect had been and would be only nine dollars per week, and it was the duty of the court to so limit the right of recovery in this regard."

In Lindsay v. Kansas City, 195 Mo. 166, 180, 93 S. W. 273, the petition alleges that plaintiff has lost one month's time, amounting to $30, and in the instructions given the amount was not so limited but permitted the jury to find damages in addition to the $30, which the plaintiff had already suffered. The court approved the instructions on the ground that, "The allegations of the petition referred to the loss of her means of livelihood from the time of bringing the action, in addition to that which she had already lost. . . . The court properly submitted to the jury the damages she had suffered up to the time of the trial as well as those which she would suffer on account of her injuries in the future. We do not think the instruction broadens the recovery beyond that which was prayed for in the petition."

The fact that the plaintiff in his petition states the character of his business or employment and his earning capacity therein in connection with the allegations as to loss of time and future earnings, as was done in the case of Dean v. Wabash Railroad Co., 229 Mo.

425, 437, 129 S. W. 953, does not necessitate an instruction limiting his recovery to a definite amount. In Heinz v. Railways Co., 143 Mo. App. 38, 122 S. W. 346, the court held that in that case the petition fixed the amount of damages for loss of time and the same limitations should be made in the instructions and distinguishes that case from other cases in this manner: "The decisions of Tandy v. Transit Co., 178 Mo. 240, and Lindsay v. Kansas City, 195 Mo. 167, relied on by plaintiff, are not in point. In those cases there was testimony tending to prove the injured party would sustain loss of time in the future—that is, after the filing of the petition and even after trial; and for this reason it was held instructions on the measure of damages which did not limit recovery to the loss of time alleged in the petition were not erroneous, since the allegation covered only time lost up to the day the petition was filed. But in the present case whatever time plaintiff lost and whatever expense he was put to for treatment by a physician, had all been lost and incurred prior to the filing of the suit."

That was a proper distinction between the case then under consideration and the cases there referred to, but it is not to be inferred that the rule that the instructions must follow the petition in limiting damages for lost time or earnings does not apply in any case where the loss of time is not completed at the time of filing the petition—that is in cases of permanent injury. Damages for loss of time or earnings accruing after the petition is filed, and after trial even, may be so limited by the petition that the instructions must likewise limit the amount of recovery. Thus in Radtke v. Basket & Box Co., 229 Mo. 1, 21, 129 S. W. 508, the court said: "In the case at bar, the loss by injury to earning capacity was not only fixed from the date of the injury to the date of filing the petition at nine dollars per week, but it was fixed at such sum for the future." It was accordingly held that the instruc-

tion must likewise limit the amount of recovery for loss of time and earnings.

Loss of time or earnings is only one element of damages arising from personal injuries. The petition may signal out and make such element a distinct item of damages with a positive and definite limitation as to the amount, or it may state such element as one of the component parts of the total damages with or without an allegation as to the earning capacity of the plaintiff by way of inducement. In the one case the instructions must contain the same limitations as the petition: In the other case there is no such definite limitations in the petition and there need not be in the instructions. In the instant case the only allegations claimed by the defendant tending to fix the limitations of the amount claimed for loss of time is, "that he was earning *about* $700 per annum, and was in line of promotion for *higher wages.*" This cannot properly be construed as so definitely fixing and limiting the value of the time and earnings lost and to be lost as to require the instruction to contain a limitation of the amount to be awarded for this particular element of damages. The court was not broadening the issues made by the pleadings in giving the instruction, as it did, telling the jury to take into consideration the loss of time and earnings without limiting the amount to be awarded for that element of damages to a definite amount.

The second contention is that the court should have sustained a demurrer to the evidence in that no negligence of the master was shown and that whatever defects and dangers there were in the rope and its use in loading these bridge timbers were known to and assumed by plaintiff. In this connection the evidence is sufficient to support these facts and they must be taken as true on this appeal (Phelan v. Construction Co., 227 Mo. l. c. 666, 704, 127 S. W. 318; Holloway v. Kansas City, 184 Mo. 19, 82 S. W. 89): That the rope in

question, furnished by defendant for this purpose, had been in use a year or more; had become considerably worn and defective; had been exposed to the weather and "was getting worn and rotten." Just prior to this accident it was noticed that one or two strands of the rope were broken in one place and the attention of the foreman was called to this and the workmen asked him what to do about it. He gave the direction "to cut and tie it," which was done, thereby removing this apparent weak spot. But it is certainly a fair inference to say that this was an indication that the entire rope was becoming worn and losing its strength. Of all this the defendant, through its *alter ego* the foreman, had notice and directed the workmen, of whom plaintiff was one, to continue its use, which they did until it broke and plaintiff was thereby injured. Plaintiff stated that as three men had been pulling on the rope before it was cut and tied he thought that two men could do so safely afterwards.

Under these facts would it do to say that the condition of the rope was equally open to the observation of the defendant's foreman and this plaintiff, and that each is presumed to be equally careful and observant of conditions and dangers? If so, what is negligence in one is negligence in the other. If the plaintiff did not observe, apprehend and avoid the danger, then defendant is not liable for failure to do the same thing. Such is defendant's contention here. If this be the law, then truly the master has at last found the way (to escape liability) he long has sought and mourned because he found it not.

What are the respective duties of the master and servant with reference to the use of ropes, tools or other appliances furnished by the master for the servant's use? They are these: The master must use ordinary care to provide reasonably safe appliances for the servant's use. This is a continuing duty and

does not end with the furnishing of tools and appliances reasonably safe at the time furnished. [Coin v. Lounge Co., 222 Mo. 488, 505, 121 S. W. 1; Booth v. Railroad, 217 Mo. 710, 718, 117 S. W. 1094; Ludwig v. Cooperage Co., 156 Mo. App. 117, 136 S. W. 749; Harris v. Railroad, 146 Mo. App. 524, 124 S. W. 576; Ogan v. Railroad, 142 Mo. App. 248, 251, 126 S. W. 191; Blankenship v. Hughes Paint & Glass Co., 154 Mo. App. 483, 135 S. W. 970.]

As will be seen from these and other cases too numerous to mention the duty of the master in this respect is a positive, active and continuous one. In Gutridge v. Railroad, 105 Mo. 520, 528, 16 S. W. 943, the court quotes with approval from Baker v. Railroad, 95 Penn. St. 211, as follows: "But there was evidence in this case, sufficient certainly to make a question for the jury, that such a rope after having been used for a year or more, and exposed during that time as the one in question seems to have been, was no longer a safe rope, even though it did not outwardly exhibit any signs of decay. The master is bound to know that a rope under such circumstances will only last a limited time. It will not do for him to furnish a sound rope and then fold his arms until by actually breaking it is demonstrated to be insecure. It will not do to say the servant is bound to know this as well as the master, and to warn him that after such a time to procure a new rope."

In Ogan v. Railroad, 142 Mo. App. 428, 252, 126 S. W. 191, the court, quoting from Houston v. Brush, 66 Vt. 331, said, "It will not do to say that having furnished suitable and proper machinery and appliances, the master can thereafter remain passive, so long as they work well and seem safe. The duty of inspection is affirmative and must be continually fulfilled and positively performed. Anything short of this would not be ordinary care."

On the other hand the duty of the servant in this respect is of a negative and passive character. It goes no further than that he shall not use appliances which are so obviously and glaringly defective that a reasonably prudent man would not attempt to use the same. [Gibson v. Bridge Co., 112 Mo. App. 594, 598, 87 S. W. 3; Rowden v. Mining Co., 136 Mo. App. 376, 385, 117 S. W. 695; Coin v. Lounge Co., 222 Mo. 488, 505, 121 S. W. 1; Mahaney v. Railroad, 108 Mo. 191, 201, 18 S. W. 895; Morgan v. Oronogo Mining Co., 160 Mo. App. 99, 141 S. W. 735; Overby v. Mining Co., 144 Mo. App. 363, 372, 128 S. W. 813; Blakenship v. Hughes Paint & Glass Co., 154 Mo. App. 483, 135 S. W. 970.]

In Gibson v. Bridge Co., supra, the court said: "It is the duty of the servant to serve and obey. It is not supposed when given a task to perform that he will on his own motion consume his master's time in making comprehensive inspections to detect dangers. All that is required of him is that he use his senses in the position assigned him; and as to dangers not to him apparent, and not inherent to the employment, he has the right to rely upon his master's judgment and humanity for the safety of his position."

As illustrating the difference between the duty of the master and that of the servant in detecting and avoiding dangers in the use of tools and appliances, it is held that the master is required to be vigilant, and to make inspections, and to use tests whenever reasonably necessary in order to discover defects, weakness and dangers; and this is especially true in respect to instrumentalities whose natural tendencies are to weaken and deteriorate by use and age. [1 Labatt Master and Servant, sec. 159; Houston v. Brush, 66 Vt. 331, 29 Atl. 380; Ogan v. Railroad, 142 Mo. App. 248, 252, 126 S. W. 191; Gutridge v. Railroad, 105 Mo. 520, 528, 16 S. W. 943; Tateman v. Railroad, 96 Mo. App. 448, 454, 70 S. W. 514.]

So far as we have been able to find there are no cases holding that any such duty is imposed on the servant.

It is also the well established doctrine, of this State at least, that the servant never assumes the dangers arising from the negligence of the master, for the reason that he is not required to anticipate that the master will be negligent.  [Curtis v. McNair, 173 Mo. 270, 73 S. W. 167; Briscoe v. Railroad, 130 Mo. App. 513, 109 S. W. 96; Brady v. Railroad, 206 Mo. 509, 528, 102 S. W. 978; 105 S. W. 1195; Holman v. Iron Co., 152 Mo. App. 672, 685, 133 S. W. 379; Wiley v. Gas Co., 132 Mo. App. 380, 111 S. W. 1185; George v. Railroad, 225 Mo. 364, 125 S. W. 196.]

There is a constant effort on the part of masters to have the courts place them and their servants on the same footing with reference to discovering and avoiding dangers arising from the use of defective tools, machinery and appliances.  It is sought, on the one hand, to argue that a given state of facts does not prove want of ordinary care on the part of the master because the servant did not discover the defect from the same facts, and the servant's failure to detect same is urged as positive proof that the defects are so latent that the master could not reasonably be required to anticipate or find the same; and, on the other hand, it is argued that if the defects are so open and such that the master is held negligent for not discovering the same, this is proof positive that they were equally open and apparent to the servant and he must be held to be negligent also or to have assumed and waived the dangers arising from such apparent and open defects.  In this manner the servant is sought to be ground between the upper millstone of nondiscoverable defects on the part of the master and the nether millstone of contributory negligence or assumption of risks of discoverable and open defects on the part of the servant.

The courts have as yet maintained a wide distinction between the defects which are so latent that the master could not by ordinary care discover the same and those which are so obvious and glaring as to involve the servant in the assumption of risks or contributory negligence in not discovering same.

In this case we think the facts are such, considering the positive duty of the master to be vigilant in discovering defects, to warrant the jury in finding, as it did under proper instructions, that defendant was negligent in failing to furnish plaintiff with reasonably safe appliances with which to work; and it was likewise warranted, considering plaintiff's duty only required him to refrain from using appliances so obviously defective as to deter a reasonably prudent man from so doing, in finding that plaintiff was not guilty of contributory negligence.

On the third assignment of error as to the verdict of $5000 being excessive, it is sufficient to say that while defendant's evidence tends strongly to show that plaintiff's injuries are not serious or permanent and are largely feigned, yet, if plaintiff and his witnesses are believed, and that was for the jury, then plaintiff is a nervous and physical wreck beyond hope of recovery and totally disabled from making a living.

It therefore results that the judgment must be affirmed. *Robertson, P. J.,* concurs. *Farrington, J.,* not sitting.