EMMA BLANCHE DAVIS et al., by GEORGE DAVIS, Guardian, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, April 3, 1911.

1. **APPELLATE PRACTICE: Abstract of Record: Affidavit for Appeal.** Where respondents attacked the sufficiency of appellant's record of the abstract proper by a motion to dismiss on the ground that the record did not set out the affidavit for appeal nor the substance thereof. *Held*, that all that is required is a recital in the record proper that the affidavit required by law was filed, and that it was adjudged sufficient by the granting of the appeal.

2. ———: ———: **Motion for New Trial.** Where respondents attacked the sufficiency of appellant's record of the abstract proper by a motion to dismiss on the ground that "it did not show that a record entry was made of the filing of the motion for a new trial," etc. *Held*, that it is sufficient if the abstract recited the fact of the filing of the motion for the new trial,

and the date, and term of the filing, from which it appears that the motion was filed on the day after the verdict was rendered, and at the same term, because the important fact to be disclosed in an authentic way is that the motion for a new trial actually was filed within the four days prescribed by statute.

3. **EVIDENCE: Circumstantial Distinguished from Speculative Evidence.** Where the principal contention of defendant was that trial court erred in refusing to direct a verdict in its favor, because the inference that the deceased father of the infant plaintiffs was struck by some part of the passing engine while his foot was caught in a decayed tie, can be reached only by building inference on inference and should therefore be rejected as pure speculation; *held*, after reviewing the evidence, that such an inference rests squarely on a foundation of convincing circumstantial evidence, and hence should not be disregarded as speculative.

4. **RAILROADS: Personal Injury: Unavoidable Accident.** Where the evidence discloses that the injury was not due to any fault of the deceased father of infant-plaintiffs, nor to any negligence of the engineer, but was due to the purely accidental fact that the deceased stepped into a hole caused by the decay of a tie, which constituted a lurking trap, the presence of which neither he nor the engineer had any reason to anticipate, the injury to deceased was an unavoidable accident, and defendant's demurrer to the evidence should have been sustained.

5. ————: **Duty to Self-Invited Pedestrians: Ties.** Defendant railroad owed self-invited pedestrians no duty to use only perfectly sound ties. ·

Appeal from Adair Circuit Court.—*Hon. Nat M. Shelton*, Judge.

REVERSED.

*Campbell & Ellison* and *J. G. Trimble* for appellant.

*Smoot & Cooley* and *Higbee & Mills* for respondent.

JOHNSON, J.—Respondents in their brief attack the sufficiency of appellant's abstract of the record proper, on two grounds, viz., *first*, that it "does not set out the affidavit for appeal nor the substance thereof,"

and, *second*, "it does not show that a record entry was made of the filing of the motion for a new trial or of the overruling thereof, or of the filing of an affidavit for an appeal or of the order granting an appeal.

In a number of recent cases, e. g. State ex rel. v. Broaddus, 216 Mo. 340; Booth v. Railroad, 217 Mo. 715; Griffin v. Franklin, 224 Mo. 618, the Supreme Court hold that it is not necessary for the abstract to set out the affidavit for appeal or even the substance thereof. All that is required is a recital in the record proper that the affidavit required by law was filed and that it was adjudged sufficient by the granting of the appeal. As was said in Griffin v. Franklin, "The presumption arises that the court proceeded by right and not by wrong and we think the expression 'due and statutory form' implies an affidavit." Tested by this rule we find the abstract is not deficient in respect to the substance of the first objection.

As to the second point, the abstract recites the fact of the filing of the motion for new trial and the date and term of the filing, from which it appears that the motion was filed on the day after the verdict was rendered and at the same term. This is sufficient. The important fact to be disclosed in an authentic way is that the motion for new trial actually was filed within the four days prescribed by the statute. [Harding v. Bedoll, 202 Mo. l. c. 630.] In this case the Supreme Court suggests a form for such recitals but strict adherence to such form is not enjoined and the court say that "Even this (the form) might be further abbreviated so as to aver and show the same facts." Rules relating to abstracts of the record are not intended to be unreasonable or harshly applied and no cryptic meaning or talismanic virtue should be ascribed to any verbal formula. Such rules should be strictly enforced, otherwise appellate courts would be annoyed and delayed by vague, confusing and even untrue records. Their pathway through the history of the case must be made smooth by the lawyer and they

will not stop to make crooked paths straight nor rough and obscure places smooth and plain. On the other hand where, as here, the record bears the stamp of verity and unequivocally states the essential facts, we shall not dismiss the appeal on the ground that the recital in question might be improved. That would be sacrificing substance to form—a thing to be avoided in the application of rules of procedure as well as of rules of the substantive law. The motion to dismiss is overruled.

This is an action for damages prosecuted by the minor children of James Davis, deceased, on the ground that the death of their father was caused by the negligence of defendant in the operation of one of its trains. A trial to a jury resulted in a verdict and judgment for plaintiffs in the sum of six thousand dollars and the cause is here on the appeal of defendant.

The lethal injury was inflicted near eleven o'clock in the evening of July 17, 1907, at a point on defendant's railroad about one mile west of the village of Stahl in Adair county. Davis was a widower living at Dewey, a small hamlet two and a half miles west of Stahl. At one time there had been a mine and some stores at Dewey but the mine had been abandoned, the merchants had departed, and nothing remained but a few residences. The villagers were compelled to go to Stahl for their supplies and for social intercourse and recreation, and it appears that the railroad track was the favorite way for pedestrians. A wagon road ran parallel to the track, but it was not used in bad weather by footmen and, owing to recent rains, it was muddy. A general store in Stahl was the social magnet for the sober-minded but a pool hall and some dramshops attracted the more convivial. Davis belonged to the latter class and on the fatal evening followed his custom of emulating the example of poor Tam O'Shanter. He had achieved local notoriety as one who could drink deeply and still carry his load becomingly and on the last night of his life, he fully sustained his reputation. He was among the last

to leave when the dramshops closed and then was only "talkative, not drunk," as one of the witnesses graphic· ally describes his condition.    Some time before the regular west-bound train passed through he started to walk home on the railroad track.    The next morning his dead body was found about a mile west of Stahl at the bottom of the railroad embankment and about fifteen feet north of the track.    A deep bruise on his hip and side indicated that he had been struck a violent blow. The shoe on his right foot had been torn off and was found at a point between his body and a defective tie. The shoe was torn in two, the laces were severed, and their loose ends remained in the hooks.    About fifteen feet west of the west end of a trestle bridge and some twenty-five feet southeast of the body a tie had rotted at its north end in a way to leave a wedgeshaped aper- ture, and a splinter freshly broken from one side of the hole pointed to that tie as the cause of the unfortunate man's death.    It was found that the heel of the shoe would fit snugly in this natural bootjack at the place where it was splintered.

The defendant introduced no evidence and the plaintiffs did not offer the engineer and fireman as wit- nesses.    So far as the record discloses there was no eye- witness to the tragedy.    Two witnesses, farmers living in the vicinity, heard a man halloo.    The one nearest heard him exclaim, "Oh Lordy! Oh Lordy! Oh Boys!" Neither heard the train and both could have heard a signal had any been given.    The trestle bridge was thirty feet long and the track was level and almost straight.    It curved very slightly towards the southwest. Evidently the engineer and fireman did not see Davis nor hear his cries.

The principal contention of defendant is that the court erred in refusing to direct a verdict in its favor. In the consideration of the questions presented by the demurrer to the evidence, we shall adopt the facts in evidence most favorable to the maintenance of the cause

of action alleged in the petition. Counsel for defendant argue with much earnestness that the inference of their opponents that Davis was struck by some part of the passing engine (presumably the end of the pilot beam) while his foot was held in the "bootjack" can be reached only by building inference on inference and, therefore, should be rejected as a result of pure speculation. We do not regard such inference as speculative but find it rests squarely on a foundation of convincing circumstantial evidence. The position of the body and of the shoe; the character of the wound; the condition of the shoe; the freshly splinted opening in the tie end and the cries of the wretched man faithfully and accurately portray the manner of his death. That his death was instantaneous is proved by the nature of his injuries and the fact that he lay where he fell leaving no trace of a struggle. That he knew the train was coming while he was caught in a trap is demonstrated by his cries of distress, and the nature of the trap is disclosed by the decayed and splintered tie end and the tell-tale shoe. There can be no reasonable doubt that while he was leaving the track for the train to pass, he stepped into the bootjack, found that he was caught and could not extricate himself and then gave voice to his agony.

But his awful plight does not tend to prove any negligence on the part of the defendant and a close analysis of all the circumstances of the occurrence constrains us to hold that plaintiffs have failed to sustain their burden of proof. The gravamen of the action is negligence and negligence always must be proved. In cases of this character we begin with two presumptions, i. e., that the injured person was in the exercise of due care, and that the person in control of the instrumentality of death likewise was in the exercise of reasonable care. Either of these presumptions may be overcome by evidence, but the burden of proof is on the plaintiff to show that the injury would have been avoided had the defendant performed some duty he owed the

injured person.   The fact of injury alone will not support an inference of a negligent breach of such duty.

We shall grant for argument that on account of the general use of the railroad track by pedestrians the engineer owed Davis the duty of keeping a sharp lookout and that had he performed that duty he would have seen the man on the track. But there is nothing in the evidence to show that Davis was unaware of the approach of the train, and there was nothing to suggest to the engineer that he was in peril, nor was he in any peril until he stepped into the "bootjack." After he became entrapped the sounding of the whistle or bell would not have extricated him and would not have apprised him of any fact he did not know.   The purpose of such signals is to impart notice of the approach of the train and if the endangered person already knows that fact, the failure to signal cannot be regarded as a proximate cause of the injury.   Nor is there anything tending to show that the train could have been stopped after the peril arose. Instead, the circumstances indicate very strongly that it was too close for anything to be done when Davis stepped into the hole.   No doubt he allowed himself only sufficient time to get off the track and was detained but an instant in the trap.   Less than half a minute would have enabled him to escape either by sliding his foot forward or by unlacing his shoe and withdrawing his foot.     .

The evidence discloses that the injury was not due to any fault of Davis, nor to any negligence of the engineer, but was due to the purely accidental fact that he stepped into a hole caused by the decay of a tie. Neither he nor the engineer had any reason to anticipate the presence of the lurking trap and neither should be censured for what, to each, was an unavoidable accident. It goes without saying that defendant owed self-invited pedestrians no duty to use only perfectly sound ties.

The demurrer to the evidence should have been sustained.   The judgment is reversed.   All concur.