WM. H. BLANKENSHIP, Respondent, v. A. M. HUGHES PAINT & GLASS COMPANY, Appellant.

### Kansas City Court of Appeals, February 13, 1911.

1. MASTER AND SERVANT: Negligence: Safe Tools. Plaintiff sued for damages for the loss of an eye caused by being struck by a piece of steel which broke off the side of a coopering tool when struck by a hammer in coopering a keg, in the course of his employment by defendant. The tool was highly tempered and brittle and liable to chip off, which could have been detected by reasonable inspection. *Held*, that the demurrer to plaintiff's evidence was properly overruled.

2. ———: ———: Slanting Blow. Whether or not the flying off of the piece of steel that struck plaintiff in the eye was caused by striking the tool a slanting blow was properly submitted to the jury under the evidence.

3. ———: ———: Latent Defect. If the chipping off had been caused by a latent defect, such defect would have been special, that is, in some particular part of the material, otherwise it would have been a patent defect and discoverable by inspection. As the defect appeared on opposite sides of the tool in question, it was a general and not a latent defect.

4. ———: ———: Contributory Negligence. Although plaintiff knew that the tool was battered, he was not guilty of contributory negligence, precluding a recovery, under the circumstances in this case.

5. ——————: ——————: ——————.  Where it is shown that the tool in question is made for defendant according to its special design, there is no presumption that it was safe for use, especially as the manufacturer had no knowledge that it was to be used in the manner shown by the evidence.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

AFFIRMED.

*Boyle & Howell* for appellant.

(1) The court should have sustained the demurrer to the evidence. The defendant was not an insurer— its duty was simply to exercise ordinary care to furnish plaintiff a reasonably safe tool with which to work. Goransson v. Manufacturing Co., 186 Mo. 300; Duerst v. Stamping Co., 163 Mo. 607; Franklin v. Railroad, 97 Mo. App. 480; Railroad v. Nelms, 83 Ga. 70. (2) Instruction numbered 1 given for plaintiff was erroneous in this, that it told the jury that their verdict must be for the plaintiff if they found that the tool was defective and not reasonably safe, "in that the edges thereof were worn and battered," the real issue of the case being whether the tool was improperly or too highly tempered. The instruction is broader than the proof. Huston v. Railroad, 129 Mo. App. 576; Heinzle v. Railroad, 182 Mo. 528; Atchison v. St. Joseph, 133 Mo. App. 563; Holden v. Railroad, 177 Mo. 456; Murray v. Transit Co., 176 Mo. 183; Harrison v. Lakeman, 183 Mo. 581. (3) The language of counsel for plaintiff in his argument to the jury was improper and prejudiced the defendant in the minds of the jury. The objectionable language of counsel complained of was as follows: "A murderous and miserable policy of economy prompted this defendant to improvise this tool that was the cause of plaintiff's injury; a tool that was not used by any other persons in the country; an improper and inefficient tool." And, "what would one of you men take for

one of your eyes? You should think of this when you come to assess the amount of damages." Beck v. Railroad, 129 Mo. App. 7; Franklin v. Railroad, 188 Mo. 533; Rice v. Sally, 176 Mo. 107; Sea v. Transit Co., 106 Mo. App. 329.

*Frank P. Walsh, E. R. Morrison* and *James P. Aylward* for respondent.

(1) The demurrer to the evidence was properly overruled. Defendant could not rely on the maker to inspect the tool and determine its fitness for use, because the maker was not told of the manner in which it was to be used and in fact assumed that it was to be struck only on the end. Ice Machine Co. v. Keefer, 26 Ill. App. 466. Besides defendant was bound to make a reasonable inspection to determine its fitness for the particular use to which it was to be applied. Tallman v. Nelson, 141 Mo. App. 478; Morton v. Railroad, 81 Mich. 423; Roughan v. B. & L. Block Co., 161 Mass. 24; Railroad v. Elliott, 149 U. S. 266, 37 L. Ed. 728; Railroad v. Huntley, 38 Mich. 537; Ballard v. Mfg. Co., 51 Hun 193. For a failure to exercise reasonable care to furnish a reasonably safe tool the defendant is liable. Duerst v. St. Louis Stamping Co., 163 Mo. 607; Franklin v. Railroad, 97 Mo. App. 473; Booth v. Railroad, 76 Mo. App. 516; Robbins v. Big Circle Mining Co., 105 Mo. App. 78; Goransson v. Mfg. Co., 186 Mo. 300; Shore v. Bridge Co., 111 Mo. App. 278. (2) Plaintiff's instruction No. 1 was not erroneous. There was no evidence that any special duty to inspect rested upon plaintiff. There was ample proof that the edge of the tool was worn and battered at the point from which this chip came. Defendant is liable if the injury was caused by both the worn and battered condition of the tool and its defective temper. (3) Language of counsel to which objection is made must be incorporated in the bill of exceptions, it is not sufficient to copy it in a motion for new trial. Norris v. Whyte. 158 Mo. 20, and cases

cited.    Exceptions must be preserved in the bill of exceptions to rulings of the court on arguments of counsel.    State v. Thurman, 121 Mo. App. 374; Estes v. Railroad, 111 Mo. App. 1; Reed v. Calp, 213 Mo. 577.

BROADDUS, P. J.—This is an action for damages for injury received by plaintiff as the result of the alleged negligence of the defendant.

On August 24, 1908, the plaintiff was employed by the defendant and while he was engaged in the course of his employment in coopering a certain keg he struck a coopering tool with a hammer whereupon a piece of steel broke off the side of the tool and struck him in the left eye, from the effects of the wound he thereby received he finally lost the sight of the eye altogether.

The plaintiff is a corporation owning and operating a paint and glass plant in Kansas City, Missouri.

For cause of action it is alleged, that, the tool which consisted of a piece of steel used for the purpose of coopering barrels was improper and insufficient for the purpose.    Various defects are assigned among which was one that the tool was not reasonably safe in that the face was worn and battered and also the edges, and was not properly tempered, in that, it was too highly tempered and thereby rendered too hard and brittle, so that there was danger of the same chipping and small pieces flying off and striking defendant's servants' while using the same; that defendant negligently failed and omitted to exercise reasonable care to inspect the said tool and failed to warn plaintiff of its unsafe and dangerous condition; and that defendant negligently failed to adopt, promulgate and enforce adequate rules for the management of the work of the establishment, particularly in and about the use of said coopering tool.

The answer is a general denial, and an allegation of contributory negligence.

The plaintiff at the time of his injury was engaged in filling and coopering small barrels or kegs of paint.

While coopering the kegs he would place the edge of it under the hoop and against the barrel and strike the tool from underneath. The keg on which plaintiff was working at the time of his injury was about fourteen inches high and he was working on the second hoop within about six inches from the floor. While he was loosening the second hoop, it being hard to get off, it became necessary to strike the tool a hard blow with the hammer. When the blow was struck a piece of the steel flew off the side of the tool and struck him in the eye.

The plaintiff had been using the tool in question for several months and used others of a different kind prior thereto. Plaintiff testified that he had sharpened the tool on a grindstone, to keep it from slipping off the hoops, and that when he needed a new tool he was directed to go to Mr. Morris to get it; that he was told by defendant's superintendent, Mr. Durham, that when he wanted one Morris was the person to go to; that the tool he had formerly used was battered on the edges and he asked Morris for a new one and got the one in question; that the top of the tool was battered and overhung, but that he did not strike it on top, but on the side; that the chip which struck him did not come from a battered or mashed place on the side of the tool; that the defendant had no system of inspecting tools or any employee that when around examining them; that the side and edge along where this chip came out as well as the other side were flattened and mashed down, so it projected, which was the result of being hammered.

The blade of the tool in question was a flat piece of steel with blunt end and sides and the handle of the same material and all in one piece. And that it was used by placing the point of the blade on its edge or the side against the hoop as the occasion demanded. Prior to the use of this one the defendant had used a tool with a wooden handle. All the tools used by the defendant up to the time of plaintiff's injury had been bought from the Hauck Tool Works, a standard manu-

factory of tools, and had given satisfaction. The tools of the kind in question were made after a special design of the defendant; and the manufacturer did not know that it was to be worked by using the sides as well as the point.

It was shown by experts this tool was highly tempered and thereby rendered brittle, and as such was liable to chip off when struck by a hammer; and that this quality could have been detected by a reasonable inspection.

The jury returned a verdict for plaintiff in the sum of four-thousand dollars. From the judgment the defendant appealed.

Defendant offered a demurrer to the plaintiff's case which the court overruled. The court at the instance of defendant gave an instruction to the effect that, if the injury inflicted was the result of the act of plaintiff in striking the tool accidentally a slanting blow thereby causing the chip to fly off, the plaintiff was not entitled to recover; or that if the injury was the result of a latent defect in the tool which could not have been discovered by an ordinarily careful inspection or test, the finding would be for the defendant. One other instruction was given at the instance of the defendant to the same effect practically as the first, and one upon the burden of proof. Fourteen others were asked and refused.

Instruction one given for plaintiff reads as follows: "The court instructs the jury that the defendant, in this case, was bound, in law, to exercise reasonable care to furnish plaintiff reasonably safe tools and appliances with which to work.

"If therefore, you believe and find from the evidence, that on or about the 24th day of August, 1908, the plaintiff, in the due course of his employment, was engaged in coopering the keg mentioned in evidence, and that the defendant had negligently furnished the plaintiff with a coopering iron or tool with which to

perform his work, and that the same was defective and not reasonably safe in that the edges thereof were worn and battered, and in that the same was improperly and too highly tempered, hardened and brittle, if you so find, and that by reason thereof there was danger of the same chipping, and danger of small pieces thereof flying off and striking plaintiff while using the same, and that all of said defective, unsafe and dangerous conditions, if any, were known to the defendants, or by the exercise of reasonable care would have been known to it in time, by the exercise of reasonable care, to have remedied the same prior to the injuries, if any, to plaintiff, but defendant negligently and carelessly failed so to do, and that by reason thereof plaintiff was injured, and if you further believe and find that plaintiff was at the time in the exercise of ordinary care himself, then your verdict must be for the plaintiff."

As to the first proposition that plaintiff was not entitled to recover, we are of the opinion the plaintiff made out a prima facie case. That the tool in question was not safe for use was clearly demonstrated when it was shown that it was too highly tempered and thereby brittle, which would naturally cause it to throw off chips when struck with much force by the hammer used for the purpose.

It is well settled law that the master is bound to furnish his servant with reasonably safe instrumentalities to do his work, and while the servant in entering the service of his master assumes the risks that ordinarily and usually are incident to the business, he does not assume the risk incident to the failure of the master to furnish him reasonably safe instruments to perform his duty as such.

When plaintiff proved the defect in the tool and that he was in the exercise of ordinary care while he was so injured, and that his injury was caused by the said defect, he had made out his case. But it is contended by the defendant that his proof did not go far

enough; that the flying off of the piece of steel that struck him in the eye might have been the result of a slanting blow or a latent effect in the material that could not have been discovered by any reasonable inspection. To support this view, we are cited to Goranson v. Manufacturing Co., 186 Mo. 300, where the court said: "It therefore appears that the master would be liable if the sliver was caused to fly off by reason of the pin having been too highly tempered, but that he would not be liable if it was caused by the act of the workman himself in striking the pin a slanting blow, or if there was a latent defect in the pin." And that therefore it devolved upon the plaintiff to show that the sliver flew off from the pin because the pin was too highly tempered. As we understand the facts of that case the plaintiff merely showed that the pin was too highly tempered, and went no further. But here the proof was that because the tool was too highly tempered that when it became battered it would in all probability throw off slivers when struck by a hammer. In the Goranson case the pin was not in evidence, but here the tool was produced and submitted to the jury for their examination, and they were authorized to form an opinion from its appearance and condition what caused it to chip off. If it had been caused by a latent defect, such defect would have been special, that is, in some particular part of the material, otherwise it would have been a patent defect and discoverable by inspection. As the defect appeared on opposite sides of the tool, it was a general and not a latent defect.

And upon the question whether the plaintiff struck the tool with a slanting blow, or that a latent defect in the material caused the injury, was submitted to the jury by the two instructions asked and given at the instance of the defendant, to which we have called attention.

Although plaintiff knew that the tool was battered, under the circumstances, he was not precluded from re-

covery on the ground of contributory negligence. [Booth v. Kansas City & Independence Air Line, 76 Mo. App. 516.] In a somewhat similar case, the plaintiff struck a claw bar with a steel hammer which caused a sliver to fly off the bar and strike him in the eye. The face of the claw bar was battered, had small cracks on the edges, was cracked open and had scaled. Although its condition was known to the plaintiff, he was allowed to recover. The court held that the danger was not so patent as to charge the plaintiff as a matter of law with contributory negligence. And it is held that, "if the servant knows, or by the exercise of ordinary care could know, that the appliances furnished are not altogether safe, he is not obliged to refuse to use them or quit the service, if he reasonably believes he can safely use them notwithstanding they are reasonably safe." [Minnier v. Railway Co., 167 Mo. 99; Robbins v. Big Circle Mining Co., 105 Mo. App. 78.]

It is contended instruction numbered one given for plaintiff was error, in that the evidence of plaintiff was that he was not injured by a chip that flew off from a battered part of the tool, whereas the instruction bases plaintiff's right to recover on that ground. But the instruction does not base his right to recover on that ground alone. The language in "that the same was defective and not reasonably safe in that the edges thereof were worn and battered, and in that the same was improperly and too highly tempered, hardened and brittle," etc. It was improper to include the terms describing the battered condition of the tool, but it could not be misleading, as the jury were bound also to find that it was too highly tempered and brittle.

But it is insisted that as the defendant bought the tool from a reputable manufacturer, the defendant did not owe the duty of inspection to the servant. [Dompier v. Lewis, 131 Mich. 144 (91 N. W. 152).] In a sense this may be true, but like all general rules it must have exceptions. If the appliance is purchased from a rep-

utable and standard maker, it is sufficient inspection if the master looks it over and does not discover any defects. He need not separate its parts for hidden defects. [Tallman v. Nelson, 141 Mo. App. 478.] It is held that the master in such instances in selecting instruments for the use of his servant is bound to use such care as will detect such defects as can be found by a careful inspection, but this duty does not bind him to find a hidden defect. [Roughan v. Boston & Lockport Block Co., 161 Mass. 24; Morton v. Detroit R. Co., 81 Mich. 423, (N. W. 46, P. 111); Richmond & Danville R. R. Co. v. Elliott, 149 U. S. 266.]

As it was not shown that the tool in question was one ordinarily in use, but of a special design of the defendant, there was no presumption that it was safe for use, especially as the manufacturer had no knowledge that it was to be used in the manner described. [Kane v. The Falk Co., 93 Mo. App. 209.]

Objection is made to certain language used by plaintiff's counsel in addressing the jury, but the language alleged to have been used, does not appear in the proceedings contained in the bill of exceptions, but by ex parte affidavits, the matter is not subject to review by this court. [Norris v. White, 158 Mo. 20, and numerous other cases.]

Finding no error the cause is affirmed. All concur.

CASES DETERMINED

BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1911.