## CHARLES A. SAGER, Respondent, v. SAMSON MINING COMPANY, Appellant.

### Springfield Court of Appeals, January 29, 1914.

1. **MASTER AND SERVANT: Tools and Appliances: Duty of Master in Furnishing.** A master is only required to use ordinary care to furnish for the servant, tools that are reasonably safe. He is not required to furnish the safest tools and appliances.

2. **MASTER AND SERVANT: Proper Tools and Appliances: Standard for Determining.** The proper standard for determining whether a master in a given case has used ordinary care in providing reasonably safe tools for the servant, is obtained by comparing the master's conduct in that regard with that of ordinarily prudent men engaged in the same or similar business.

3. **MASTER AND SERVANT: Tools and Appliances: Master's Duty Concerning.** Where a servant engaged in breaking boulders is injured by particles thereof striking him in the eye and destroying his sight, he cannot hold the master liable for negligence merely on the ground that a round faced hammer instead of a flat faced one was furnished him by the master, where it appeared that round faced hammers where generally furnished by those engaged in the same business, since an employer is not an insurer but is liable for negligence only.

4. **MASTER AND SERVANT: Action for Furnishing Unsafe Tools: Review of Evidence.** Action by servant against the master for negligence in furnishing unsafe tools and appliances. Evidence reviewed and *held* not to sustain actionable negligence on the part of the master.

5. **APPELLATE PRACTICE: Reversal: Remanding for a New Trial.** Where a judgment for plaintiff must be reversed, although plaintiff attempted by improper evidence to prove an essential element of his case, it will be remanded for a new trial.

### On Motion for a Rehearing.

6. **INSTRUCTIONS: Master and Servant: Personal Injuries.** It is not reversible error to give an instruction for the plaintiff covering only the facts authorizing a recovery, where a separate instruction is given covering an independent matter of defense.

7. **MASTER AND SERVANT: Defective Appliances: Injuries: Burden of Proof.** In an action by a servant against a master for personal injuries because of improper appliances and tools furnished by the master, the burden is not on the servant to prove that the furnishing of such appliances was not the general custom among those engaged in similar work.

8. **MASTER AND SERVANT: Tools and Appliances: Evidence Reviewed.** In an action by a servant against a master for personal injuries, evidence reviewed and *held* not sufficient to show that it was not the general custom among masters in similar work to furnish tools similar to the one which caused the injury.

Appeal from Jasper County Circuit Court, Division Number One.—*Hon. Joseph D. Perkins*, Judge.

REVERSED AND REMANDED.

*McIndoe* and *Thurman,* for appellant.

(1) The court should have given the peremptory instruction asked by the defendant at the close of the evidence. No negligence was shown. Breen v. St. Louis Cooperage Co., 50 Mo. App. 202; Bennett v. Lumber Co., 116 Mo. App. 699; Fisher v. Central Lead Co., 156 Mo. 479; Brands v. Street Car Co., 213 Mo. 698; Southerland v. Garretson Lumber Co., 130 S. W. 40; Trigg v. Land & Lumber Co., 187 Mo. 237; Kipper v. Shoe Co., 116 Mo. App. 167. (2) The defendant was not obliged to furnish the safest and best appliances and tools, nor to do the work in any particular manner. It was not insurer of the plaintiff's safety. Southerland v. Garretson Lumber Company, 130 S. W. 40; Saversnick v. Schwarzchild and Sulzberger, 141 Mo. App. 509; Dickerson v. Jenkins (Mo. App.), 128 S. W. 220; Brands v. Car Co., 213 Mo. 699; Bundle v. Miller Mfg. Co., 189 Mo. 552; Wendall v. Railroad, 100 Mo. App. 556; Fulger v. Boothe, 117 Mo. 500; Grover v. Bolt and Nut Co., 153 Mo. 327; Lee v. Kansas City Gas Co., 91 Mo. App. 612. (3) The plaintiff was an experienced workman. There was nothing hidden or obscure. If there were any dangers the dangers were obvious to him and the demurrer should have been sustained. Berry v. Nedart, 56 Mo. App. 443; Grover v. Bolt and Nut Co., 153 Mo. 327; Marshall v. Hay Press Co., 69 Mo. App. 256. (4) If the evidence leaves a doubt or uncertainty, it is not a case for the jury, and if the injury resulted from several causes it is upon the plaintiff to show with reasonable certainty that the cause complained of was productive of the result. Caudle v. Kirkbride, 117 Mo. App. 412; Warner v. Railroad, 178 Mo. 125; Wilkerson v. Railroad (Mo. App.), 124 S. W. 543. (5) Under the pleadings and under the evidence, the demurrer should have been sustained. Allen v. Quercus Lumber Co., 171 Mo. App. 492; Tucker v. Tel. Co.,

132 Mo. App. 418; Elliot v. R. R., 67 Mo. 272; Smith v. Railroad, 151 Mo. 391, 48 L. R. A. 368; Moglagl v. Kasing Iron Co., 154 Mo. 758. (6) Plaintiff's own evidence shows that he was guilty of contributory negligence hence he cannot recover. Harris v. K. C. S. R. R., 250 Mo. 567, 157 S. W. 564; Sissel v. R. R., 214 Mo. 315, 113 S. W. 1104. (7) Instruction No. 1 given for plaintiff is inconsistent and based upon assumed facts. There must always be a causal connection between the evidence and the injury complained of. Fowler v. Santa Fe Elevator Co. (Mo. App.), 127 S. W. 616; Brands v. St. Louis Car Co., 213 Mo. 698; Saversnick v. Schwarzchild and Sulzberger, 141 Mo. App. 512; Lee v. K. C. Gas Co., 91 Mo. App. 616; Strokes v. Distillery Co., 64 Mo. 528; Harper v. Bridge Co., 187 Mo. 575; Wrog v. Light Co., 68 Mo. App. 390.

*Norman A. Cox* and *Hugh Dabbs,* for respondent.

(1) The trial court properly submitted this case to the jury. Blankenship v. Paint & Glass Co., 154 Mo. App. 483; Robbins v. Big Circle Mining Co., 105 Mo. App. 78; Mitchell v. Railroad Co., 97 Mo. App. 411; Franklin v. M., K. & T. Ry., 97 Mo. App. 473; Phillips v. Frisco Ry. Co., 211 Mo. 419; Miller v. Railroad, 90 Mo. 394; Thompson on Negligence, sec. 59. (2) The duty to furnish a reasonably safe place in which to work, and reasonably safe appliances, devolves upon the master, and this duty cannot be delegated to a fellow-servant so as to relieve the master of liability. Henson v. Stave Company, 151 Mo. App. 234; English v. Rand Shoe Co., 145 Mo. App. 439. (3) Where the master's negligence combines with that of a fellow-servant to cause an injury to another servant, the master is liable to such other servant for the injury. Cole v. Railroad Co., 183 Mo. 94; Browning v. Railway Co., 124 Mo. 55; Bluedorn v. Mo. Pac. Ry., 108 Mo. 439; Haworth v. K. C. S. Ry., 94 Mo. App.

215, 26 Cyc. 1302. (4) Instruction No. 1 given for plaintiff properly declared the law. Jewell v. Bolt Co., 231 Mo. 201; George v. Railroad, 225 Mo. 364; Ludwig v. Cooperage Co., 156 Mo. App. 128; Burkhart v. Rope Co., 217 Mo. 466; Blundell v. Mfg. Co., 189 Mo. 552; Obemeyer v. Chair Co., 229 Mo. 109.

FARRINGTON, J.—Action to recover the sum of twelve thousand dollars as damages for personal injuries. Judgment for plaintiff. Defendant appealed.

Respondent, Charles A. Sager, appeared at appellant's mine west of Joplin, in Jasper county, Missouri, on the afternoon of February 28, 1912, and stated to appellant's ground foreman who had charge of employing men for appellant that respondent's father, an employee of appellant, was sick, and that he had come to work in his father's place. The ground foreman, in the presence of witnesses, told respondent to take his father's place on the screen and go to work. In compliance with this order, respondent went to work on the screen, on the night shift, and had assisting him a man named Carl Hunter. A part of the duties of respondent and Hunter consisted in breaking boulders that were too large to pass through the screen, and in loading "non-ore-breaking rock" on cars and wheeling it away from the platform. In breaking boulders, respondent and Hunter used sledge hammers (commonly called boulder hammers) which were left near the screen by appellant for that use, appellant's ground foreman and superintendent both stating that they placed the hammers that were to be used right by the screen and that they were up there every day where they could see the hammers. About an hour and a half after respondent went to work, as he was returning to the screen after wheeling a car of rock away from the platform, Hunter, who was breaking boulders about five feet from where respondent was standing, struck a boulder with the hammer which

he had picked up from beside the screen, where, with three others in the same condition, it had been left by appellant for his use. The face of the hammer was worn round, somethink like a baseball, and almost to a point. A shower of fragments of rock from the boulder scattered all about respondent, some striking him on the coat and body, and one piece striking him in the left eye with such force that it staggered him back five or six feet, and that injury resulted in the loss of sight in that eye. The evidence adduced by respondent and some of that offered by appellant shows that a hammer in such condition has a greater tendency to cause showers of fragments of rock to fly in all directions when a boulder is hit with it than does a hammer not so worn. The evidence shows that when a boulder hammer is new and in good condition the striking surfaces are but slightly convexed and that when a boulder is struck with a hammer with faces in this condition the tendency is to smother the fragments of rock down to the floor so that they do not fly; but that when the faces of the hammer are worn and rounded, the fragments of rock fly at an angle upward.

Respondent in this action set up, in addition to negligence in furnishing an old, worn-out and insufficient hammer, several other alleged acts of negligence, to-wit: That the defendant wholly disregarded its duty to plaintiff by then and there negligently and carelessly failing to furnish plaintiff a reasonably safe place in which to work in that there were not sufficient workmen furnished to perform the great amount of work at the screen, thereby rendering the place dangerous to plaintiff from flying rock; that Hunter, the assistant, was inexperienced, and that he struck the boulder on the wrong side; and that defendant was negligent in failing to furnish screens to cover the eyes of the workmen. But the trial judge, early in the trial, excluded all evidence offered by the plain-

tiff which tended to prove any of the alleged acts of negligence except the one that the hammer was defective and worn-out and an unsafe tool.

The theory of the trial court is well shown by an occurrence at the trial, the record of which is as follows: On cross-examination of plaintiff's witness Hunter, Mr. Thurman asked this question with reference to the hammers used by mine operators in the Joplin district: "There is no particular uniformity of a kind?" The witness answered: "Not so far as I know." On redirect examination by Mr. Dabbs, the witness was asked: "It is not the uniform custom to use round hammers or worn-out hammers?" Mr. Thurman objected to the question as leading and improper, and the court sustained the objection, whereupon Mr. Dabbs remarked: "I gather from the ruling of this court that it is against us, in our attempt to show a general custom along that line. There would not be enough to submit to the jury—" The trial judge, during a discussion which followed, made this statement: "There is some evidence here that the hammer was defective and round and that a flat hammer would be safer." A little further on, the following appears: *"The Court*: Let's get at what is in evidence. The only thing I see in the case that would take it to the jury would be the failure to furnish a reasonably safe hammer. You have proved that the hammer was round-faced and worn. *Mr. Thurman*: There is no direct testimony as to the hammer. *The Court*: The last witness testified to it in the deposition: *Mr. Thurman*: Yes, that is right. *The Court*: And he says and so does Sager that a flat-faced hammer is less liable to cause particles to scatter. I don't know that I can take this case from the jury on that. I don't think I want to. *Mr. Dabbs*: I want to put in testimony as to the condition of the plaintiff's eye."

As above stated, the trial proceeded on this theory and evidence was adduced by both sides for

the purpose of proving or disproving this one alleged negligent act on defendant's part. The instructions were limited by the court to this one ground, and the case submitted to the jury, and nine of its members returned a verdict for plaintiff assessing his damages at seven hundred and fifty dollars.

The evidence for the defendant—given by a number of witnesses—is positive that in the mining district in which defendant operated its mine and in which plaintiff worked, the boulder hammers, weighing from six to eight pounds, were furnished for this work, and that it was the general and ordinary custom among mine operators and miners in that district to use such boulder hammers until they become so light they would not perform the service, and that they were not discarded because of any unsafe condition arising from becoming rounded or pointed.

There is no charge or proof that any trouble grew out of an improper tempering or an inherent defect in the hammer, the sole ground being that because the hammer was rounded by long use the place on the platform or screen where plaintiff was working was rendered dangerous and unsafe. There is no evidence showing just what hit the plaintiff in the eye, but his testimony and that of Hunter that when the rock was struck fragments of rock flew and hit plaintiff in the face and on his coat was sufficient to justify the jury in drawing an inference that it was a piece of the flying rock that caused the injury.

Appellant contends that the injury was caused by an accident which was incident to the character of work in which plaintiff was engaged, that it was required to use no more than ordinary care in furnishing boulder hammers, and that when the evidence all showed that it furnished the same kind of hammer which was used throughout the district for similar work, it had brought itself up to the standard it must necessarily conform to, that is, the exercise of ordinary

care. The respondent contends that when he showed that the hammer which was furnished was in such condition that particles of rock would fly and scatter more than they would had a hammer been furnished which was but slightly convexed, or which had a flat striking surface, this was a showing which would take the case to the jury on the question of whether the defendant had furnished a reasonably safe tool. This ignores the evidence of defendant that the hammer used was such as is ordinarily used by reasonably careful and prudent miners. Plaintiff's instructions also ignore this defense.

Under the rule in Missouri, as declared in numerous decisions of the Supreme Court and courts of appeal, we are of the opinion that the plaintiff showed no more than that the place was made dangerous by use of the hammer furnished and that a safer place would have been afforded had a hammer of a flat or slightly convexed striking surface been furnished. If the contention of respondent were correct, a master would be required to furnish the safest appliances, and the rule that he is only required to use ordinary care to furnish tools that are reasonably safe would be swept aside. In determining whether the master in a given case has used ordinary care, his conduct is compared with that of ordinarily prudent men engaged in the same or similar business, if there are any, using the same or similar tools.

How could there be anything more incident to the breaking of boulders with a sledge hammer than that particles of rock would fly when the blow is struck? The trial judge recognized this in his remark—"Everybody knows that when you break boulders there are bound to be rocks flying." The plaintiff, according to his own testimony, was an experienced miner, and had worked in several mines throughout the Joplin district where he had performed the same kind of work as that in which he was engaged when injured.

Everybody knows that breaking a boulder with any sort of hammer, whether round-faced or flat-faced, causes fragments of rock to fly, and that it is not possible to so control them as to make them fly uniformly in the same direction. It is true, a flat-faced hammer would have a tendency, according to the evidence, to hold the fragments nearer the ground and this would render less dangerous the place occupied by the workmen's eyes; but the theory on which the defendant in this case must be held is not merely the furnishing of a dangerous place but the furnishing of a place made dangerous by the negligence of the defendant. In determining whether defendant has made the place dangerous by negligence, it must have furnished something that the ordinarily prudent man engaged in the same or similar business would not have furnished, and this must be tested by what those engaged in the same line of business ordinarily and customarily do, unless, of course, it is shown that there was concerted action among them to furnish unsafe appliances.

The plaintiff, it seems, recognized the force of this rule, judging from the conduct and remarks of his counsel during the trial. Counsel did attempt to show that it was not a uniform custom to use rounded or worn-out hammers, but the question was not put in the proper form and for that reason the court properly sustained defendant's objection to it, whereupon plaintiff's counsel remarked: "I gather from the ruling of this court that it is against us, in our attempt to show a general custom along that line. There would not be enough to submit to the jury—" There was no further attempt throughout the trial to show that hammers considerably rounded by use are discarded by the users on account of the increased danger—the plaintiff failed to show this. The defendant, after its demurrer to the evidence was overruled, showed that rounded or pointed hammers are ordinarily used, and

that picks are often used in breaking boulders, and
that hammers are not discarded because they become
rounded or pointed but are used until they become too
light for the service to which they are put.   Plaintiff
showed that the hammer in question was   defective
compared to a new hammer, and that it was more dan-
gerous than a new hammer, but to establish negli-
gence, as against defendant's evidence in this case,
he should have shown by some evidence that the ham-
mer actually used was not such as the ordinarily pru-
dent man engaged in the same or similar business
would have furnished.   There is no evidence what-
ever in this record that such a hammer as was shown
to have been used is not used by ordinarily prudent
men engaged in the same or similar business; on the
contrary, all the evidence as to custom and usage
in the Joplin district showed that boulder hammers,
regardless of shape and size, are used until they be-
come too light for the service.

This case falls within the rule announced in num-
erous decisions in this State, especially that of Brands
v. St. Louis Car Co., 213 Mo. 698, 112 S. W. 511, in
which the following language appears (l. c. 707, 708):
"It is not the duty of the master to furnish any par-
ticular kind of tools, implements or appliances.   His
duty in this respect is to use ordinary care and pru-
dence in furnishing safe and suitable tools and imple-
ments.   No inference of negligence can arise from evi-
dence which shows that the implement was such as is
ordinarily used for like purposes by persons engaged
in the same kind of business."   In the same opinion
(l. c. 708, 709), the following is quoted from the case
of Minnier v. Railroad, 167 Mo. 99, 66 S. W. 1072:
"Absolute safety is unattainable, and employers are
not insurers.   They are liable for the consequences,
not of danger, but of negligence; and the unbending
test of negligence in methods, machinery, and appli-

ances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same; and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set up a standard which shall, in effect, dictate the customs or control the business of the community.'' And the comment made on the case quoted from was that it had been adopted and approved by the court in Banc in Chrismer v. Bell Telephone Co., 194 Mo. 189, 92 S. W. 378, and that the same doctrine is announced in many well-considered cases in other jurisdictions. The Brands case was approved in the later decision of Coin v. Lounge Co., 232 Mo. l. c. 505, 506, 121 S. W. 1. The Chrismer case (pages 207 to 210) contains a painstaking discussion of this question.

In the case of Jewell v. Bolt & Nut Co., 231 Mo. 176, 132 S. W. 703, Judge Woodson used the following language which we think is clearly decisive of the case at bar (l. c. 198) : ''There are instances where the court can declare as a matter of law that the plaintiff's injuries are the result of the assumption of risk, that is, where all the evidence in the case shows that the danger which caused the injury was not the negligence of the master, or the result thereof. For instance, in a case where the master employs a servant to dress some stone and furnishes him with the usual and ordinary tools with which that work is usually performed; and, while so engaged, suppose the servant should so use the hammer as to cause a chip from the stone to fly up and strike him in the eye and injure the same.

In such case clearly the servant assumed the risk of being so injured, for the reason that it was not traceable to the negligence of the master; and in such a case the court should so instruct the jury." Hence it was recognized that if the master furnished the servant the usual and ordinary tool with which the work is usually performed and a piece of rock flew and hit the servant there would be no liability.

The sole question in the case at bar is, can the plaintiff recover by merely showing that a dangerous tool was furnished, that by an assistant using it he was injured, and that there was a safer tool which could have been furnished? in the face of a showing by defendant that the tool was such as is ordinarily and customarily used in the same business in which it was engaged, and without submitting that issue and test of negligence to the jury?

In the much-quoted case of Bohn v. Railroad, 106 Mo. 429, 17 S. W. 580, we find this language (1. c. 433, 434): "The gravamen of the petition is that the defendant negligently furnished defective, unsafe and improper prize-poles and means of leverage for the use of the employees in raising the turntable. The evidence is all to the effect that bridge timbers, like the timber in question, are constantly used by railroad men to raise and remove heavy bodies of material. This is shown by witnesses versed in such business, and questioned by no one. There can be no fair claim made that defendant was guilty of negligence, for the simple reason that the bridge timber was used as a means of leverage. . . . No inference of negligence can arise from evidence which shows that the implement was such as is ordinarily used for like purposes by persons engaged in the same kind of business. The timber used in this case was new, sound and suitable for all the purposes for which it was used, and there is no evidence showing or tending to show that it had any inherent defects whatever."

The rule we adhere to is announced in Saversnick v. Schwarzschild, 141 Mo. App. 509, 125 S. W. 1192; Berning v. Medart, 56 Mo. App. 443; Wendall v. Railway Co., 100 Mo. App. 556, 75 S. W. 689; and Dickinson v. Jenkins, 144 Mo. App. 132, 128 S. W. 280. Counsel for respondent in oral argument frankly admitted that in Missouri in determining whether ordinary care has been exercised the conduct of the defendant is measured by the test announced in these decisions.

Respondent cites the case of Blankenship v. Paint & Glass Co., 154 Mo. App. 483, 135 S. W. 970. In the opinion in that case is the following statement, which strengthens rather than weakens the doctrine invoked by the appellant: "As it was not shown that the tool in question was one ordinarily in use, but of a special design of the defendant, there was no presumption that it was safe for use, especially as the manufacturer had no knowledge that it was to be used in the manner described." We are referred to the case of Robbins v. Mining Co., 105 Mo. App. 78, 79 S. W. 480, in which we find the following language (l. c. 82): "The evidence did not show that the hammer in question was such as was in general use by miners engaged in a like business, nor that such was in general use by the defendants. But it did show, as stated, that hammers much worn were in common use. But the question here was, whether the hammer in controversy had been used to such an extent as to render it most reasonably safe. It would have been impossible to show, and it was not attempted, that such hammers were all in the same condition, brought about by use. The chances were that they would differ in their conditions in that respect by degrees—some more and some less. *The testimony was rather to the effect that such defective hammers, though frequently used, constituted an exception to the general custom.*" (Italics are ours.) In that case it was a piece of the hammer that flew off

and struck the plaintiff's eye, and it might be said that it is not an incident that ordinarily occurs when a boulder is struck and broken that a piece of the hammer (which is such a hammer as should be and is used by the ordinarily prudent man engaged in the same or similar business) will fly off. It was a defective hammer that was the proximate cause of the injury, and the injury was not, therefore, an occurrence connected with the breaking of boulders which could be said to be incident to that business. There is no doubt that hitting the boulder was the proximate cause of the injury in the case at bar and one which could reasonably be anticipated, but before liability attached it was necessary to establish the master's negligence. We are referred also to the case of Miller v. Railroad, 90 Mo. l. c. 394, 2 S. W. 439, by respondent, and find that it *supports* the doctrine we announce. In the case of Mitchell v. Railroad, 97 Mo. App. 411, 76 S. W. 647, cited by respondent, the accident which happened was not one which could be held to be incident to the use of the car and the question that was submitted to the jury was whether the injury occurred by reason of the alleged contributory negligence in overloading the car or was due to the latent defect in the timber. In the case of Franklin v. Railway Co., 97 Mo. App. 473, 71 S. W. 540, the injury was caused by a maul improperly tempered, a flying piece of which caused the injury, and the distinction between that character of cases and the one at bar has been hereinbefore made.

It being conceded that defendant in a case like this can be held to no higher degree of care than that exercised by the ordinarily prudent man engaged in the same business, and the evidence failing to show that the conduct of the defendant was any different from that of those engaged in the same line of business, makes this case lack an essential element of liability, namely, *negligence*. Under the evidence introduced, the injury was caused by one of the incidents

of the business and was an injury occasioned by a dangerous place not shown to have been made dangerous through the negligence of the defendant. In view of the fact that plaintiff's attorney did attempt—although by an improper question—to show that it was not the custom in the district to use the kind of hammer furnished in this instance, which evidence was properly excluded by the court because of the form of the question, we feel that the cause should be remanded in order that plaintiff may be permitted to introduce evidence that no such custom prevailed, if it is available, and try the case on that theory. The judgment is accordingly reversed and the cause remanded. Robertson, P. J., and Sturgis, J., concur.

## ON MOTION FOR REHEARING.

PER CURIAM.—The opinion in this case is not to be understood as holding that, in a case where the evidence is sufficient to carry to the jury the question of whether or not the tool or appliance in question is such as is commonly adopted and used by those in the same business, an instruction authorizing a finding for plaintiff must mention and require the jury to find against this proposition where another given instruction plainly requires the jury to do so. Nor do we hold that the burden is on the plaintiff to prove the negative of this proposition. This court is committed to the doctrine that it is not reversible error to give an instruction for plaintiff covering only the facts authorizing a recovery, where a separate instruction is given covering an independent matter of defense. [Johnson v. Springfield Traction Co., decided at this term.] The difficulty in the present case is that the evidence in this record, regardless of any burden on either party, is all one way and to the effect that the hammer in question is such as is generally used throughout that mining district. If the unbending

test of negligence in the use of tools is the ordinary usage of the business, then, when all the evidence in the case shows that the tool complained of is such as is ordinarily used, no negligence is shown and the jury cannot find that there is.

It is pressed on us that the plaintiff's witness in describing the hammer in question said it was worn off almost to a point and that other witnesses, when asked about using a *pointed* hammer, said they had never seen or used a *pointed* hammer; therefore, it was shown that *pointed* hammers, like this one, were not in common use. This method of reasoning sticks in the bark and is a play on words rather than a sound legal argument. It is perfectly apparent to any one reading the evidence that this word was merely an exaggerated way of describing the condition of the hammer after much use. It is nowhere shown that this hammer was worn different in any material way from other hammers after being used to the same exent. In fact this hammer was selected for his own use by a fellow servant of plaintiff from a number of such hammers, likewise worn by use, and there is no pretense that such servant was negligent in selecting a hammer worn so different or more pointed as to be especially dangerous. There is no suggestion that it had chipped off, become one-sided, or shaped different from other hammers when much worn by use in breaking boulders— a use which would dull rather than shapen a "point." The uniform evidence is that hammers of practically the same size, shape, weight and material as this one was when new are used throughout that district and are discarded only when worn to such an extent as to be ineffective for the work required and are discarded for that reason. They are not discarded because of any tendency to become more dangerous because of long use and wear in crushing particles of rock to fly in the face or eyes of workmen. If such is the common usage and custom throughout that mining district, then

defendant cannot be held to a higher degree of care than this ordinary usage of that business. The motion for rehearing is, therefore, overruled.

